469 So.2d 731 (1985)
UTILITIES COMMISSION OF THE CITY OF NEW SMYRNA BEACH, Appellant,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Appellee.
No. 64147.
Supreme Court of Florida.
March 21, 1985.
Rehearing Denied June 18, 1985.
Davisson F. Dunlap, Jr. of Pennington, Wilkinson & Dunlap, and Frederick M. Bryant of Moore, Williams & Bryant, Tallahassee, for appellant.
William S. Bilenky, Gen. Counsel and Carrie J. Hightman, Associate Gen. Counsel, Tallahassee, for appellee.
McDONALD, Justice.
This case is before us on a direct appeal from a final order of the Florida Public Service Commission (PSC) which disapproved a proposed territorial agreement on electric service between the Utilities Commission of the City of New Smyrna Beach (city) and Florida Power & Light (FP & L). We have jurisdiction. Art. V, § 3(b)(2), *732 Fla. Const. The issue involved in this appeal is whether the PSC applied the proper standard in disapproving the territorial agreement. We find that it did not and reverse the order.
The city and FP & L disagreed over the provision of electric services in the area surrounding the city. The PSC held a hearing on this dispute and entered an order dividing the disputed territory. The city appealed that order to this Court in case no. 61,308. While the appeal was pending, the city and FP & L agreed to settle the territorial dispute. This Court relinquished jurisdiction in case no. 61,308 and remanded to the PSC for consideration of the proposed territorial agreement.
On remand the PSC issued a preliminary order approving the proposed territorial agreement as being in the best interest of the public. The approval order would become final unless adversely affected persons petitioned the PSC for a formal proceeding. A group of utility customers, objecting to the transfer of customers in an area known as South Beach from FP & L to city electric service, petitioned for a formal proceeding. The PSC refused to approve the territorial agreement without a hearing, and this Court rejected the city's request for mandamus against the PSC. The PSC held hearings on the territorial agreement and then denied approval because transferring the South Beach area electric service from FP & L to the city would result in no substantial economic, reliability, or safety benefits to those affected customers. It did not say that anyone would be harmed by the agreement.
The PSC has jurisdiction "[t]o approve territorial agreements between and among rural electric cooperatives, municipal electric utilities, and other electric utilities under its jurisdiction." § 366.04(2)(d), Fla. Stat. (1983). This Court has stated that the PSC's power to approve territorial agreements and resolve territorial disputes does not constitute an unlawful delegation of legislative authority because the PSC is guided in such cases by a statutory mandate to avoid "further uneconomic duplication of generation, transmission, and distribution facilities." Gainesville-Alachua County Regional Electric, Water & Sewer Utilities Board v. Clay Electric Coop., Inc., 340 So.2d 1159, 1162 (Fla. 1976), quoting from § 366.04(3), Fla. Stat. (1975). We do not see how these objectives are served by the PSC requirement as expressed in this case that certain customers must receive substantial benefits before a territorial agreement will be approved.
The legal system favors the settlement of disputes by mutual agreement between the contending parties. This general rule applies with equal force in utility service agreements. Territorial agreements by public utilities have been approved because they serve both the interests of the public and the utilities by minimizing unnecessary duplication of facilities and services. Storey v. Mayo, 217 So.2d 304 (Fla. 1968), cert. denied, 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969). The substantial benefit test used by the PSC in this case runs directly counter to the principle favoring settlement of utilities' territorial disputes. The PSC order on appeal focuses almost exclusively on the lack of substantial benefits to those customers in the South Beach area, rather than addressing the merits of the territorial agreement as a whole.[*] The PSC should base its approval decision on the effect the territorial agreement will have on all affected customers in the formerly disputed territory, not just whether transferred customers will benefit.
We do not relegate the PSC to a "rubber stamp" role in approving territorial agreements. The PSC has the responsibility to ensure that the territorial agreement works no detriment to the public interest. We find this situation analogous to that in transfer of utility asset cases, where other courts have held that the public *733 need not be benefited by the transfer so long as the public suffers no detriment thereby. E.g., Pacific Power & Light Co. v. Federal Power Commission, 111 F.2d 1014 (9th Cir.1940); Montgomery County v. Public Service Commission, 203 Md. 79, 98 A.2d 15 (1953); Electric Public Utilities Co. v. West, 154 Md. 445, 140 A. 840 (1928). For PSC approval, any customer transfer in a proposed territorial agreement must not harm the public.
Applying the no-detriment test to the facts of this case, we find the PSC erred in refusing to approve the territorial agreement as contrary to the public interest. The PSC's final order found the territorial agreement served the public interest in all areas except for the South Beach customer transfer. The PSC recognized that the South Beach transfer would result in increased reliability and economic savings, but found those benefits too remote or unsubstantial to justify the customer transfer. This substantial benefit requirement imposed on the South Beach transfer created an unnecessary burden on the settling utilities. The agreement as a whole contained no detriment to the public and should have been approved. Accordingly, we reverse the PSC order on appeal and remand for entry of an order approving the territorial agreement as proposed.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON and EHRLICH, JJ., concur.
ALDERMAN and SHAW, JJ., dissent.
NOTES
[*] The PSC agreed to approve the territorial agreement if the parties would resubmit it without the South Beach area customer transfer.