600 So.2d 450 (1992)
CITY OF HOMESTEAD, Appellant,
v.
Thomas M. BEARD, etc., et al., Appellees.
No. 77352.
Supreme Court of Florida.
May 7, 1992.
Michael L. Rosen, D. Bruce May and Susan L. Turner of Holland & Knight, Tallahassee, for appellant.
David E. Smith, Director of Appeals, Florida Public Service Com'n, and J. Christian Meffert of Bryant, Miller & Olive, P.A., Tallahassee, and K. Crandal McDougall, Miami, Florida Power & Light Co., for appellees.
McDONALD, Justice.
On August 7, 1967, the city of Homestead (City) entered into a territorial agreement with Florida Power & Light Company *451 (FPL), a privately owned utility company. The agreement defined the geographic boundaries of their respective service areas in and around the city of Homestead. At the time of the agreement, the City's municipally owned electric utility was exempt from the regulatory jurisdiction of the Florida Public Service Commission (PSC).[1] However, because of the PSC's regulatory authority over FPL, the parties submitted the agreement to the PSC for approval. The agreement did not provide for a specified duration or termination date. The PSC, in Florida Public Service Commission Order No. 4285, issued December 1, 1967, approved the agreement. In response to a petition for certiorari filed by customers whose service was being transferred pursuant to the new agreement, this Court upheld the PSC's order approving the agreement. Storey v. Mayo, 217 So.2d 304 (Fla. 1968), cert. denied, 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969).
In a letter to FPL dated May 11, 1988, the City gave formal notice of its intent to terminate the agreement effective August 7, 1988 and invited FPL to negotiate a new agreement. FPL responded that the agreement remains in full force and effect until a mutually acceptable change is approved by the PSC. On July 22, 1988, FPL filed a petition for declaratory statement with the PSC seeking a determination as to the rights and obligations of the parties under the agreement. On December 2, 1988, the PSC issued the declaratory statement requested by FPL, stating that the territorial agreement was a valid and binding agreement, but denying FPL's demand for prohibitive or injunctive relief against the City.
In response to a subsequent motion for reconsideration or clarification by FPL, the PSC stated that the agreement is subject to modification by the PSC in a proper proceeding, but declined to elaborate further because the City had filed an action in Dade County Circuit Court seeking a judicial declaration that the agreement is terminable upon the giving of reasonable notice. After the circuit court's denial of FPL's motion to dismiss and motion to abate on grounds that the PSC had exclusive jurisdiction in the matter, the PSC intervened and filed a petition for writ of prohibition in this Court. In Public Service Commission v. Fuller, 551 So.2d 1210 (Fla. 1989), this Court held that the circuit court did not have jurisdiction to conduct further proceedings on the City's complaint for a declaratory judgment.
On September 4, 1990, the City initiated the present proceedings by filing a petition to "Acknowledge Termination or in the Alternative, Resolve Territorial Dispute" with the PSC. FPL responded by filing a motion to dismiss, which the PSC granted in Florida Public Service Commission Order No. 23955, issued January 3, 1991.[2] The City then filed a notice of administrative appeal to obtain review of that order by this Court.[3]
The City's position is that because it was not subject to the PSC's jurisdiction when *452 the agreement was executed, the territorial agreement should be construed pursuant to the law of contracts rather than the law governing PSC orders. The City further asserts that, under the law in existence when the agreement was executed, a contract lacking a definite period of duration was terminable at will by either party. Thus, because the instant agreement did not have a provision governing its duration, the City had a contractual right to terminate the agreement at will and the PSC had no statutory or case law authority to deprive the City of its right to terminate. We disagree. In the absence of an express provision to the contrary in the approved agreement, the statutory and decisional law surrounding the modification or termination of PSC orders governs the territorial settlement agreement in the instant case.
In Fuller, this Court held that the territorial agreement between the City and FPL "has no existence apart from the PSC order approving it and that the territorial agreement merged with and became a part of" the PSC order. 551 So.2d at 1212. We further stated:
Any modification or termination of that order must first be made by the PSC. The subject matter of the order is within the particular expertise of the PSC, which has the responsibility of avoiding the uneconomic duplication of facilities and the duty to consider the impact of such decisions on the planning, development, and maintenance of a coordinated electric power grid throughout the state of Florida. The PSC must have the authority to modify or terminate this type of order so that it may carry out its express statutory purpose.
Id. (emphasis added). While these statements were made in the context of a jurisdictional issue, the principles set forth are applicable to the instant case.
In City Gas Co. v. Peoples Gas System Inc., 182 So.2d 429, 433 (Fla. 1965), this Court held that territorial agreements between public utilities were not violative of antitrust law based on the premise that "the public welfare does not need Ch. 542 for protection against this kind of agreement... . because the public interest is adequately protected by an alternative arrangement under F.S. Ch. 366, F.S.A." We further concluded that the "agreement could result in monopolistic control over price, production, or quality of service only by the sufferance of the commission" and that its "statutory powers are more than sufficient to prevent any such outcome if properly employed." Id. at 435. In Storey, which upheld the PSC's approval of the instant agreement, this Court "recognized the importance of the regulatory function as a substitute for unrestrained competition" and commented that "a regulated or measurably controlled monopoly is in the public interest." 217 So.2d at 307. Therefore, our decisions exempting territorial agreements from antitrust legislation have been premised on the existence of a statutory system of regulations governing the public utilities that is sufficient to prevent any abuses arising from the monopoly power created by the agreements.
We recognize that when the agreement was executed, municipally owned electric utilities were exempt from state agency supervision under section 366.11, Florida Statutes (1967), and that they enjoyed "the privileges of legally protected monopolies within municipal limits." Storey, 217 So.2d at 307 (emphasis added). However, in this case the City sought PSC approval of an agreement which extended its territorial monopoly beyond its municipal boundaries to adjacent areas. Unlike the residents of the City, the customers residing outside the municipality lack a voice in the City's political process. By accepting the additional franchise granted under the PSC order approving the agreement, the City submitted itself to the PSC's regulatory authority with respect to the subject matter of the order. See Miami Bridge Co. v. Railroad Comm'n, 155 Fla. 366, 376, 20 So.2d 356, 361 (1945) (no improper impairment of the obligation of contracts when the franchise was "accepted with the full knowledge of the existence of the police power which authorizes regulations in behalf of the public"), cert. denied, 325 U.S. 867, 65 S.Ct. 1405, 89 L.Ed. 1987 (1945).
*453 In Fuller, we expressly stated that there was "clear commission authority over these territorial agreements." 551 So.2d at 1212. This regulatory authority enables the PSC to carry out its statutory purpose and to fulfill its "responsibility to ensure that the territorial agreement works no detriment to the public interest." Utilities Comm'n v. Florida Pub. Serv. Comm'n, 469 So.2d 731, 732 (Fla. 1985). PSC approval of a territorial agreement, in effect, makes the approved contract an order of the PSC. City Gas, 182 So.2d at 436. Merely because the agreement is to be interpreted under the law of contracts does not mean we are to ignore the law surrounding PSC orders.
The City was able to enter into the instant agreement only by obtaining PSC approval. The City may not accept the benefits flowing from antitrust immunity for a territorial agreement by obtaining PSC approval and then claim the agreement is not subject to the laws governing PSC orders.[4] Therefore, the law governing the modification or termination of PSC orders was applicable to the instant agreement to the extent it did not contradict the express terms of the agreement.[5]
Moreover, even if we were to hold that the law of contracts should be strictly applied to the agreement, we would not construe the agreement to have granted the City the right to terminate at its discretion. When a contract does not contain an express statement as to duration, the court should determine the intent of the parties by examining the surrounding circumstances and by reasonably construing the agreement as a whole. See Southern Bell Tel. & Tel. Co. v. Florida E. Coast Ry. Co., 399 F.2d 854 (5th Cir.1968); Triple E Dev. Co. v. Floridagold Citrus Corp., 51 So.2d 435 (Fla. 1951); Sound City, Inc. v. Kessler, 316 So.2d 315, 317 (Fla.1st DCA 1975) (citing 17A C.J.S. Contracts § 385, p. 457); see also Institute for Scientific Info., Inc. v. Gordon & Breach Science Publishers, Inc., 931 F.2d 1002 (3d Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991). If a period of duration can be inferred from the nature of a contract and the circumstances surrounding its execution, the contract is not terminable at will and a court should give effect to the manifest intent of the parties. See Southern Bell; Sound City.
The City cites cases which hold that a contract for an indefinite period, which by its nature is not deemed to be perpetual, may be terminated at will upon the giving of reasonable notice. Perri v. Byrd, 436 So.2d 359 (Fla. 1st DCA 1983); Sound City; Gulf Cities Gas Corp. v. Tangelo Park Serv. Co., 253 So.2d 744 (Fla. 4th DCA 1971); Florida-Georgia Chem. Co. v. National Labs. Inc., 153 So.2d 752 (Fla. 1st DCA 1963). However, these cases, and the cases upon which they were premised, involve either contracts in which the courts were unable to construe a period of duration from the circumstances surrounding the execution of the agreement and the parties would be obligated to perform in perpetuity[6] or contracts in which there is a *454 lack of mutuality of obligation or certainty of consideration.[7] These contracts, by their inherent nature, implied that the parties intended some period of duration and, therefore, were considered terminable at will in the absence of an express provision to the contrary.
In contrast, the instant agreement involves the settlement of a territorial dispute. There is no mutuality of obligation problem and neither party owes the other any further affirmative obligation, but merely has the negative duty to refrain from entering the service area of the other. Parties usually enter into settlement agreements with the intention of permanently resolving their conflicts with respect to the subject matter of the agreement. Further, PSC orders are generally considered final absent the commission's inherent authority to modify or terminate them in a proper proceeding. See Peoples Gas Sys., Inc. v. Mason, 187 So.2d 335 (Fla. 1966).
In Storey, we stated that FPL and the City had executed the agreement "[i]n order to end the unsatisfactory effects of this type of expensive, competitive activity." 217 So.2d at 306 (emphasis added). The purpose behind settlement agreements is to end the dispute, not to delay the dispute until one of the parties decides it is advantageous to begin competing again. The benefit of territorial agreements is the elimination of competition and the unnecessary duplication of facilities and services. Utilities Comm'n, 469 So.2d at 731. If a party could terminate the agreement as soon as it was favorable to do so, the benefit to the public interest, as well as to the parties, would be impaired.
A party would be hesitant to make substantial investments in franchised areas if the other party could terminate the franchise at will. In the instant agreement, FPL refrained from competing with the City for twenty years, transferred a large number of its customers to the city,[8] and made investments in territories in which it believed it had an exclusive franchise.[9] The detriment to FPL as a result of these acts cannot be undone and it is unlikely that FPL intended to place itself in a position in which the City could unilaterally deprive it of its franchised areas under the agreement and, thus, impair its investment in those areas.[10] Therefore, as distinguished from agreements which, by their inherent nature, imply the parties intended the power to terminate the agreement at will, the nature of the instant agreement as the settlement of a territorial dispute and the fact that it was incorporated into a PSC order, is evidence that the parties intended the agreement to operate with finality absent an express provision to the contrary.
Finally, in construing a contract, it is well established that "the laws existing at the time and place of the making of the contract and where it is to be performed which may affect its validity, construction, discharge and enforcement, enter into and become a part of the contract as if they *455 were expressly referred to or actually copied or incorporated therein." Shavers v. Duval County, 73 So.2d 684, 689 (Fla. 1954). The instant agreement expressly provided that the parties would seek PSC approval, and the parties knew that such approval is provided by PSC order.[11] Therefore, in the absence of a provision to the contrary, we assume the parties intended to incorporate the general law governing PSC orders into the agreement.
After considering the surrounding circumstances, the nature of the instant agreement, and the law existing at the time the agreement was executed, we conclude that, absent an express provision in the agreement to the contrary, the law surrounding the modification or termination of a PSC order is applicable to the instant territorial settlement agreement. Therefore, the instant agreement is not terminable at will by the parties and may only be modified or terminated by the PSC in a proper proceeding as set forth in Peoples Gas.[12] Accordingly, we affirm the decision of the PSC in the instant case.
It is so ordered.
SHAW, C.J. and OVERTON and GRIMES, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN and HARDING, JJ., concur.
BARKETT, Justice, dissenting.
The issue to be resolved in this case is whether a territorial agreement approved by the PSC prior to 1974, which did not set forth a specific duration or date for termination, is terminable at will by either party.
The majority concludes that any contract that may have existed between the parties has, in essence, been replaced by the PSC order, which can only be terminated or modified in accordance with principles of regulatory and administrative law. Majority op. at 452. Although, by its terms, PSC approval was a prerequisite to the validity of the contract, there is a vast difference between approving the contract as valid and inferentially declaring, as the majority does, that the contract no longer exists. I cannot accept the majority's theory that the contract and the rights of the parties thereunder disappeared because PSC approval was needed to make the contract enforceable. Contracts are signed every day subject to the approval of a third party or a state agency and no one suggests that the approval requirement makes the contracts void once that approval has been obtained.
More importantly, in 1988 FPL sought and obtained from the PSC a declaratory statement that the 1967 territorial agreement was a valid, binding contract.[13] It is therefore inconsistent for FPL to now argue that the contract was subsumed in the original order.
Furthermore, in 1967 there was no statutory or decisional authority empowering the PSC to deprive a party of its contractual right to terminate a territorial agreement, or to require the party to demonstrate necessity for termination due to changed conditions. Nor can any such authority be derived from the 1974 amendment. The proviso in that amendment specifically provides that "nothing in this chapter shall be construed to alter existing territorial agreements as between the parties to such agreements." Ch. 74-196, § 1, Laws of Fla. Thus, clearly, the legislature did not intend to authorize the deprivation of rights acquired under preexisting contracts.[14]
*456 Finally, the majority's reliance on Fuller[15] is misplaced. Fuller involved a controversy over jurisdiction. The issue there was not whether the City had the right to terminate the agreement, but only whether the proper forum to determine that issue was the circuit court or the PSC. Thus, Fuller is not dispositive of the question in this case because any statements made outside the context of the jurisdictional issue are dicta. Consequently, for the foregoing reasons, the effect of the PSC order was to confirm and validate the terms of the contract, thereby adopting and incorporating those terms into the order, including whatever rights of termination were contained therein.
The only remaining question is whether the contract that existed between the parties was terminable at will. According to Williston:
"The general rule is that when a contract provides that one party shall render service to another, or shall act as his agent, or shall have exclusive sales rights within certain territory, but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will. It is true that such a result does not follow in every instance, because it is the intention of the parties which is the ultimate guide, and in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement."
9 Samuel Williston, A Treatise on the Law of Contracts, § 1017A, at 150 n. 11 (3d ed. 1967 & Supp. 1991) (quoting Lubrecht v. Laurel Stripping Co., 387 Pa. 393, 127 A.2d 687 (1956) (citations omitted)); see Sound City, Inc. v. Kessler, 316 So.2d 315 (Fla. 1st DCA 1975); 17A C.J.S. Contracts § 385(1) (1963); 17A Am.Jur.2d Contracts § 545 (1991).
In this case I am not persuaded by the majority's conclusion that the parties' intent with regard to duration can be divined. The majority's primary explanation of the parties' supposed intentions is derived from the "nature" of the agreement. Although the majority's arguments have some merit, I do not think that this Court can ascribe an intention to the parties in the absence of any evidence whatsoever of their true intentions. The Fourth District's reasoning in Gulf Cities Gas Corp. v. Tangelo Park Service Co. is instructive on this point:
Where the language of a contract is ambiguous or unclear as to a particular right or duty, the court may receive evidence extrinsic to the contract for the purpose of determining the intent of the parties at the time of the contract. However, where a contract is simply silent as to a particular matter, that is, its language neither expressly nor by reasonable implication indicates that the parties intended to contract with respect to the matter, the court should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted. In our opinion the contract before the court was "silent" as to the duration of the defendant's duty to provide gas to Tangelo Park Subdivision. In that circumstance the normal rule is that the duty is terminable at will. And this rule should have been applied. *457 253 So.2d 744, 748 (Fla. 4th DCA 1971) (citations omitted) (emphasis added); see, e.g., BMW of N. Am., Inc. v. Krathen, 471 So.2d 585, 587 (Fla. 4th DCA 1985), review denied, 484 So.2d 7 (Fla. 1986); 17A C.J.S. Contracts § 328 (1963) ("A term which the parties have not expressed is not to be implied merely because the court thinks it is a reasonable term, or because the contract is advantageous to one party or unjust to the other....") (footnote omitted)). Here, because the intention of the parties cannot be determined from the evidence, the contract must be terminable at will.
Admittedly, it may be better policy to find that the contract is not terminable at will. However, that is a separate question from whether the parties to the contract intended for the contract to be enforced indefinitely absent PSC approval. In the absence of some tangible proof of the parties intention, I would give them the benefit of their bargain as set forth in the plain wording of the contract. In this case, because the contract is silent as to duration, I would follow the rule as stated in Gulf Cities and find that the contract is terminable at will.
KOGAN and HARDING, JJ., concur.
NOTES
[1] § 366.11, Fla. Stat. (1967). In 1974 the legislature amended chapter 366 to confer upon the PSC limited jurisdiction over municipally owned electric utilities for certain purposes. Ch. 74-196, § 1, Laws of Fla. Among the powers granted was the authority "[t]o approve territorial agreements between and among rural electric cooperatives, municipal electric utilities, and other electric utilities under its jurisdiction or any of them; provided, nothing in this chapter shall be construed to alter existing territorial agreements as between the parties to such agreements." Id.
[2] The pertinent portion of the Commission's order read:

When a territorial agreement is approved by the Commission, it becomes embodied in the approving order which may only be modified or terminated in accordance with the Commission's express statutory purpose. See Fuller at 1212. Therefore, in order to withdraw or modify Order No. 4285, Homestead must make a showing that, "such modification or withdrawal of approval is necessary in the public interest because of changed conditions or circumstance not present in the proceedings which led to the order being modified." Peoples Gas System, Inc. v. Mason, 187 So.2d 335, 339 (Fla. 1966) Homestead has failed to allege facts sufficient to support a modification of Commission Order No. 4285 consistent with Peoples Gas and Fuller. Consequently, we grant FPL's motion and dismiss Homestead's petition without prejudice.
[3] We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
[4] If the agreement had provided for termination after a certain period of years, it would have terminated at the end of that period. In such case, general case law governing the modification and termination of PSC orders would have given way to the express terms of the order.
[5] The law at the time of the agreement set forth that PSC orders could be withdrawn or modified at the initiation of the PSC, a party to the agreement, or an interested member of the public "after proper notice and hearing, and upon a specific finding based on adequate proof that such modification or withdrawal of approval is necessary in the public interest because of changed conditions or other circumstances not present in the proceedings which led to the order being modified." Peoples Gas Sys., Inc. v. Mason, 187 So.2d 335, 339 (Fla. 1966).
[6] See Southern Bell Tel. & Tel. Co. v. Florida E. Coast Ry. Co., 399 F.2d 854, 856 (5th Cir.1968) (if the court can not ascertain the intent of the parties, it can "rely on rules of law which purport to determine what ... the parties intended"); Sound City, Inc. v. Kessler, 316 So.2d 315, 318 (Fla. 1st DCA 1975) (agreement to continue to sell products to a party held terminable within a reasonable time when, after considering the surrounding circumstances, the court could not ascertain the intent of the parties); Gulf Cities Gas Corp. v. Tangelo Park Serv. Co., 253 So.2d 744, 748 (Fla. 4th DCA 1971) (agreement to supply gas held to be terminable at will when "its language neither expressly nor by reasonable implication indicates" what the parties intended).
[7] Florida-Georgia Chem. Co. v. National Labs. Inc., 153 So.2d 752, 754 (Fla. 1st DCA 1963) ("exclusive sales contracts so lacking in mutuality of obligation or certainty of consideration may be terminated by either party at will"); Perri v. Byrd, 436 So.2d 359, 361 (Fla. 1st DCA 1983) (employment contract terminable at will upon the giving of reasonable notice).
[8] FPL transferred 35 commercial and 363 residential customers to the City, and the City transferred 12 commercial and 66 residential customers to FPL. Storey v. Mayo, 217 So.2d 304, 306 (Fla. 1968), cert. denied, 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969).
[9] In City of Gainesville v. Board of Control, 81 So.2d 514 (Fla. 1955), this Court held that an agreement to furnish water to the University of Florida without charge, in order to induce the University to locate in the City, was not terminable at will despite the lack of a provision as to the duration of the agreement. The Court held that because the University had performed under the agreement, the agreement was to remain in effect until the University left Gainesville.
[10] FPL, as a regulated utility, cannot terminate the agreement without PSC approval regardless of our construction of the agreement. Thus, the City is, in effect, claiming a unilateral right to terminate the agreement. See Southern Crane Rentals, Inc. v. City of Gainesville, 429 So.2d 771 (Fla. 1st DCA 1983) (a provision for the right to cancel a contract unilaterally must be expressly provided for in the contract).
[11] The agreement provides that "[t]he parties acknowledge that the Company is regulated by the Florida Public Service Commission and that it will have to apply to the Commission for approval of this agreement." The agreement further states that "[i]f an order of the Commission is entered approving the agreement and the order becomes final, then as promptly as possible, each party shall transfer" facilities and customers located in the other's service area.
[12] See supra note 5.
[13] In re Petition of Florida Power and Light Company for a Declaratory Statement Regarding Territorial Agreement with the City of Homestead, 88 F.P.S.C 12:15 (1988). The Declaratory Statement uses the phrase "valid, binding agreement."
[14] Indeed, to construe the 1974 amendment as authorizing the PSC to alter the City's termination rights under the contract by conditioning their exercise on a showing of good cause would constitute an impermissible impairment of contract under article 1, section 10 of the Florida Constitution. See Park Benziger & Co., Inc. v. Southern Wine & Spirits, Inc., 391 So.2d 681 (Fla. 1980); Yamaha Parts Distribs., Inc. v. Ehrman, 316 So.2d 557 (Fla. 1975). Although an exception to the general rule allows for the impairment of a contract upon a showing of an "overriding necessity for the state to exercise its police powers," Park Benziger, 391 So.2d at 683, there is no "overriding necessity" in this case because the PSC would still be required to approve any new territorial agreement negotiated by the parties. See § 366.04(2)(d), Fla. Stat. (1989).
[15] Public Serv. Comm'n v. Fuller, 551 So.2d 1210 (Fla. 1989).