# Supreme Court of Florida

_____

No. SC15-504
_____

**BOARD OF COUNTY COMMISSIONERS INDIAN RIVER COUNTY, FLORIDA**,
Appellant,

vs.

**ART GRAHAM, ETC., et al.**,
Appellees.

_____

No. SC15-505
_____

**BOARD OF COUNTY COMMISSIONERS OF INDIAN RIVER COUNTY, FLORIDA**,
Appellant,

vs.

**ART GRAHAM, ETC., et al.**,
Appellees.

[May 19, 2016]

POLSTON, J.

In this consolidated appeal, the Board of County Commissioners Indian

River County, Florida (County) challenges two separate orders of the Florida

Public Service Commission (PSC).[1] The first order is a declaratory statement that the PSC issued in response to a petition filed by the City of Vero Beach (City), in which the PSC declared that the City has the right and obligation under territorial orders issued by the PSC to continue to provide electric service in the territory described in the orders (which includes unincorporated portions of the County) upon the expiration of the City's franchise agreement with the County. We reject the County's challenges to this order, and for the reasons below, hold that the City had standing to seek this declaration from the PSC concerning territorial orders to which the City is a party and which the County had taken the position would be voided by the Franchise Agreement's expiration, thereby effectively evicting the City. We further hold that the PSC's declaration is within the PSC's authority as the entity with exclusive and superior statutory jurisdiction to determine utility service areas, and that the declaration does not impermissibly grant the County's property rights to the City or violate the statutory prohibition against the PSC affecting a franchise fee.

The second order on appeal denies the County's petition for a declaratory statement on the ground that it failed to meet applicable statutory requirements. We agree and affirm this order without further comment.

_____

1. We have jurisdiction. See art. V, § 3(b)(2), Fla. Const.

- 2 -

## BACKGROUND

The Franchise Agreement between the County and the City, which gives the City the exclusive right to use County property to construct, maintain, and operate an electric system[2] in unincorporated areas of the County, expires in 2017.[3] The Franchise Agreement provides for renewal upon the mutual agreement of the parties, but the County has notified the City that it will not agree to a renewal. The agreement does not contain a buy-out clause or otherwise address the parties' rights upon its expiration. For the past several years, the City has been attempting to sell its system to Florida Power and Light Company (FPL), who also serves pursuant to PSC territorial orders in the unincorporated areas of the County. The County supports the sale to FPL, but it remains uncertain.

The Franchise Agreement defines the boundaries for the City's electric service as those that "are or may be defined in the Service Territory Agreement between the City[] and Florida Power and Light Company." Prior to the Franchise Agreement's execution, the PSC had issued territorial orders approving the City's

---

2. The record indicates that the City's system includes an electric generating plant, transmission lines and related facilities, and distribution lines serving approximately 34,000 meters, approximately 12,900 of which are located within the City limits and approximately 21,000 of which are located outside the City limits.

3. The City provided electric service in unincorporated areas of the County for many years before the Franchise Agreement's execution.

service area vis-à-vis FPL's, including a 1980 amended territorial agreement that recognizes the City's and FPL's "right and obligation to serve within" the areas referenced in the agreement. The PSC also approved an amendment to the service area boundaries after the Franchise Agreement's execution.

Representing that "the expiration of the Franchise [Agreement] calls into question the territorial agreements and boundaries approved by the PSC since the underlying legal authority for those PSC approved territorial agreements and boundaries will no longer exist," the County filed with the PSC a petition for declaratory statement requesting 14 declarations regarding its "rights, duties, and responsibilities . . . once the [franchise] expires." The County alternatively requested "that the PSC initiate such proceedings as are authorized within the PSC's jurisdiction to address the territorial agreements, service boundaries, and electric grid reliability responsibilities so as to ensure the continued and uninterrupted supply of electric service throughout the County." The City and FPL intervened and opposed the County's petition.[4]

---

4. Orlando Utilities Commission, a retail electric service provider that has a contract with the City to, among other things, supply the City's power needs over and above what the City provides itself, also intervened and opposed the County's petition. Duke Energy Florida, Inc. (Duke), Tampa Electric Company (TECO), and the Florida Electric Cooperatives Association, Inc. (FECA), were granted amicus status and filed comments in opposition to the County's petition.

In a separate proceeding before the PSC, the City also filed its own petition for declaratory statement.  In its petition, the City alleged that the County's petition "threatens to attempt to evict the City from serving in the City's [PSC]-approved service areas in unincorporated Indian River County upon the expiration of [the] franchise agreement," and asked the PSC to make the following two declarations:

> a.  Neither the existence, non-existence, nor expiration of the Franchise Agreement between Indian River County and the City has any effect on the City's right and obligation to provide retail electric service in the City's designated electric service territory approved by the [PSC] through its Territorial Orders.
>
> b.  The City can lawfully, and is obligated to, continue to provide retail electric service in the City's designated electric service territory, including those portions of its service territory within unincorporated Indian River County, pursuant to applicable provisions of Florida Statutes and the Commission's Territorial Orders, without regard to the existence or non-existence of a franchise agreement with Indian River County and without regard to any action that the County might take in an effort to prevent the City from continuing to serve in those areas.

The County intervened and opposed the City's petition.[5]

The PSC did not consolidate the dockets, but it considered both petitions at the same oral argument.  Thereafter, the PSC issued an order denying the County's petition on the ground that it "fail[ed] to meet the statutory requirements necessary

---

5.  Duke, TECO, FECA, and the Florida Municipal Electrical Association, Inc. were granted amicus status and filed comments generally supporting the City's petition.

- 5 -

to obtain a declaratory statement." In a separate order, in response to the City's petition, the PSC, rather than issue the declarations requested by the City, declared that the City "has the right and obligation to continue to provide retail electric service in the territory described in the Territorial Orders upon expiration of the Franchise Agreement."

The County appealed both orders to this Court, and this Court consolidated the cases for all appellate purposes.

## ANALYSIS

In its appeal to this Court, the County argues that the PSC erred in declaring that the City has the right and obligation to continue to serve its PSC-approved territory, including unincorporated areas of the County, after its franchise agreement with the County expires. Specifically, the County attacks the PSC's order on four bases, arguing that (1) the City lacked standing to request the declaration; (2) the declaration was outside the PSC's authority; (3) the PSC's declaration improperly strips the County of its property rights and grants them to the City, unregulated and in perpetuity; and (4) the declaration violates section 366.13's prohibition against the PSC "in any way" affecting a franchise fee. We disagree and affirm the PSC's order.

### (1)  The City Had Standing to Request the Declaration

As an initial matter, the County argues that the City lacked standing to seek the declaratory statement from the PSC.  Section 120.565, Florida Statutes, governs the requirements for requesting a declaratory statement from an agency such as the PSC, and it provides in pertinent part:

> (1) Any substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or of any rule or order of the agency, as it applies to the petitioner's particular set of circumstances.
>
> (2) The petition seeking a declaratory statement shall state with particularity the petitioner's set of circumstances and shall specify the statutory provision, rule, or order that the petitioner believes may apply to the set of circumstances.

As the PSC concluded below, the City's petition "met the[se] threshold requirements for issuance of a declaratory statement."  More specifically, the record establishes that the County has taken the position that, when the Franchise Agreement expires, so too does the City's right and obligation to serve its PSC-approved territory within the franchise area.  For example, in its own petition for declaratory statement, the County stated that, "[w]ith respect to the territorial agreements and boundaries approved by the PSC, once the Franchise has expired the [County] believes that those agreements and boundaries shall be invalid and void or voidable at least with respect to the Franchise Area."

As an electric utility subject to regulation by the PSC and a party to PSC territorial orders that the County intends to treat as invalid, at least with respect to property located in the franchise area, the City had standing to ask the PSC to provide a declaratory statement as to how the territorial orders (entered pursuant to the PSC's "exclusive and superior" authority under section 366.04, Florida Statutes) apply to its particular set of circumstances. See Pub. Serv. Comm'n v. Fuller, 551 So. 2d 1210, 1211 (Fla. 1989) (holding PSC has "exclusive jurisdiction" to modify or terminate territorial agreements approved by PSC orders); see also Fla. Pub. Serv. Comm'n v. Bryson, 569 So. 2d 1253, 1254 (Fla. 1990) (recognizing that the Florida Legislature has granted the PSC "exclusive jurisdiction over matters respecting the rates and service of public utilities" that is "exclusive and superior to that of all . . . counties") (emphasis added).

Furthermore, the County's arguments to the contrary notwithstanding, the fact that the City sought this declaration absent a concomitant request to modify a territorial agreement, resolve a territorial dispute, or address an imminent threat of uneconomic duplication of generation, transmission, and distribution facilities does not defeat the City's standing. Nothing in section 120.565 nor chapter 366 purports to so limit the PSC's authority to issue declaratory statements concerning the applicability of territorial orders issued pursuant to its statutory authority. In fact, "the purpose of a declaratory statement is to answer the petitioner's questions

about how the statutes or rules apply to his own circumstances so that he may select a proper course of action." Carr v. Old Port Cove Prop. Owners Ass'n, Inc., 8 So. 3d 403, 404 (Fla. 4th DCA 2009). That is precisely what the City asked the PSC to do here. Accordingly, we reject the County's argument that the City lacked standing.

### (2) The Declaration is Within the PSC's Authority

Next, the County argues that the PSC's declaration is not entitled to any deference by this Court because it falls outside the scope of the PSC's authority and constitutes a clearly erroneous interpretation of the County's franchise authority and the Franchise Agreement. Florida law permits an appellate court to reverse a declaratory statement "only if the agency's interpretation of the law is clearly erroneous." Regal Kitchens, Inc. v. Fla. Dep't of Revenue, 641 So. 2d 158, 162 (Fla. 1st DCA 1994). Where PSC orders are concerned, this Court has further explained:

> Commission orders come to this Court "clothed with the statutory presumption that they have been made within the Commission's jurisdiction and powers, and that they are reasonable and just and such as ought to have been made." United Tel. Co. v. Public Serv. Comm'n, 496 So. 2d 116, 118 (Fla. 1986) (quoting General Tel. Co. v. Carter, 115 So. 2d 554, 556 (Fla. 1959)); see also City of Tallahassee v. Mann, 411 So. 2d 162, 164 (Fla. 1981). Moreover, an agency's interpretation of a statute it is charged with enforcing is entitled to great deference. The party challenging an order of the Commission bears the burden of overcoming those presumptions by showing a departure from the essential requirements of law. Mann, 411 So. 2d at 164; Shevin v. Yarborough, 274 So. 2d 505, 508 (Fla.

- 9 -

1973).  We will approve the Commission's findings and conclusions if they are based on competent substantial evidence, <u>Fort Pierce Utils. Auth. v. Beard</u>, 626 So. 2d 1356, 1357 (Fla. 1993), and if they are not clearly erroneous.  <u>PW Ventures, Inc. v. Nichols</u>, 533 So. 2d 281, 283 (Fla. 1988).

<u>AmeriSteel Corp. v. Clark</u>, 691 So. 2d 473, 477 (Fla. 1997).

In this case, the plain language of the PSC's order belies the County's argument that, rather than interpret how its own territorial orders apply to the City, the PSC made determinations regarding the County's franchise authority and interpreted the Franchise Agreement.  To the contrary, the PSC expressly stated in its order that the City "is not asking us to interpret or apply the Franchise Agreement to its particular circumstances, and we are not doing so in this declaration.  The Franchise Agreement is not a rule, order, or statutory provision of this Commission, and we would have no authority to issue a declaration interpreting that agreement."

Certainly, the PSC's declaration that the City "has the right and obligation to continue to provide retail electric service in the territory described in the Territorial Orders upon expiration of the Franchise Agreement" is at odds with the County's position that the territorial orders become void with respect to the franchise area when the Franchise Agreement expires.  But the declaration does not go so far as to address any dispute that may (or may not) arise—whether with respect to franchise fees, access to property, territorial disputes that might arise if the County

- 10 -

grants a franchise to another entity, or otherwise—when (or if) the City complies with the PSC-approved territorial orders after the Franchise Agreement expires.[6] Instead, the PSC simply declared that the City must continue to serve pursuant to the territorial orders. As the entity the Florida Legislature vested with "exclusive and superior" jurisdiction under section 366.04, Florida Statutes, to (among other things) determine "which utility has the right and the obligation to serve a particular geographical area," Fla. Admin. Code R. 25-6.0439 (2015), the PSC's declaration was within its jurisdiction and powers.

**(3) The Declaration Does Not Grant the City Rights in the County's Property**

The County further argues that the PSC's declaration improperly strips it of its property rights and grants them to the City, unregulated and in perpetuity. In support of this argument, the County primarily relies upon this Court's decision in Florida Power Corp. v. City of Winter Park, 887 So. 2d 1237 (Fla. 2004).

Like the scenario presented in this case, Winter Park involved an expired franchise agreement. However, unlike this case, Winter Park did not involve a claim by the grantor of the franchise that the franchise's expiration divested the utility of the right and obligation to serve the franchise area pursuant to a PSC-approved territorial order. To the contrary, this Court's decision in Winter Park

---

6. The City asked the PSC for broader relief that, at least potentially, could have implicated these issues, but the PSC did not grant it.

does not reference a territorial order at all, nor does it involve any dispute over the utility's continued service of the franchise area.

Rather, in a suit brought in circuit court, Winter Park sought a declaratory judgment that it was still entitled to receive the franchise fee, which the utility had stopped paying after the franchise agreement expired based on the utility's position that post-expiration collection of the fee would constitute an unconstitutional tax. Based on the specific facts in Winter Park, this Court held that the fee was not an unconstitutional tax, treated the utility like a holdover tenant, and required it to continue to remit the fee to "satisfy the City's clear legal right to receive compensation reasonably related to [the utility's] use and occupation of the rights-of-way, and the regulatory and maintenance expenses incurred by the City as a result of that use." Id. at 1241; see also Santa Rosa Cty. v. Gulf Power Co., 635 So. 2d 96, 100 (Fla. 1st DCA 1994) (recognizing a county's "authority to require electric utilities to pay franchise fees for their use of the counties' rights-of-way").

While Winter Park recognizes the well-established principle that a franchise agreement is an enforceable contract governing the use of property, it does not stand for the proposition that the local government franchisor rather than the PSC gets to decide which utility serves a given area. Cf. Lee Cty. Elec. Coop., Inc. v. City of Cape Coral, 159 So. 3d 126, 128 (Fla. 2d DCA 2014) (recognizing franchise agreement was the source of the utility's "right to continue using the

public utility easements") (emphasis added); <u>City of Homestead v. Beard</u>, 600 So. 2d 450, 453 (Fla. 1992) ("Merely because the agreement is to be interpreted under the law of contracts does not mean we are to ignore the law surrounding PSC orders.").

Moreover, affirming the PSC's decision as to whether a utility has the obligation to serve under a territorial order does not otherwise run afoul of this Court's precedent by preventing a county from requiring the utility to pay a fee reasonably related to the utility's use of government property or by restricting the county's exercise of police power with respect to its property. To the contrary, the PSC avoided these issues by limiting its declaration to the City's obligations under the territorial orders within its exclusive and superior jurisdiction. Accordingly, we reject the County's argument that the PSC's order improperly grants the County's property rights to the City. Were we to hold otherwise, counties could do indirectly through franchise agreements what the PSC's "exclusive and superior" jurisdiction precludes them from doing directly. § 366.04(1), Fla. Stat. ("The jurisdiction conferred upon the commission shall be <u>exclusive and superior to that of all other</u> boards, agencies, political subdivisions, municipalities, towns, villages, or <u>counties</u>, and, in case of conflict therewith, all lawful acts, orders, rules, and regulations of the commission shall in each instance prevail.") (emphasis added).

**(4) The Declaration Does Not Violate Section 366.13, Florida Statutes**

Last, the County argues that the declaration violates section 366.13's prohibition against the PSC "in any way" affecting a franchise fee. § 366.13, Fla. Stat. ("No provision of this chapter shall in any way affect any municipal tax or franchise tax in any manner whatsoever."). The County did not raise this argument below as a reason why the PSC should deny the City's petition. In any event, it is without merit. As explained above, the declaratory statement requires the City to continue to serve pursuant to the applicable PSC territorial orders. It does not prevent the County from receiving remuneration for the City's use of its property in furtherance of its service obligation under the PSC's territorial orders, nor does the City suggest that it would be able to use the County's property without payment. The PSC's declaration does not violate section 366.13.

## CONCLUSION

Given the County's position that the expiration of the Franchise Agreement voids the PSC's territorial orders and effectively evicts the City as the authorized electric service provider in unincorporated areas of the County, the City had standing to request a declaratory judgment regarding its responsibilities under the PSC's territorial orders obligating it to serve those areas. The PSC's declaration that the City "has the right and obligation to continue to provide retail electric service in the territory described in the Territorial Orders upon expiration of the Franchise Agreement" is within the PSC's "exclusive and superior" statutory

- 14 -

jurisdiction to determine utility service areas. Furthermore, the PSC's declaration does not impermissibly grant the County's property rights to the City or violate section 366.13's prohibition against the PSC affecting a franchise fee. Accordingly, we affirm.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Florida Public Service Commission

Floyd Robert Self of Berger Singerman LLP, Tallahassee, Florida, and Dylan Todd Reingold, County Attorney, Vero Beach, Florida,

for Appellant

Charles J. Beck, General Counsel, Samantha M. Cibula, Attorney Supervisor, and Kathryn Gale Winter Cowdery, Senior Attorney, Tallahassee, Florida,

for Appellee Florida Public Service Commission

Robert Scheffel Wright and John Thomas LaVia, III of Gardner, Bist, Bowden, Bush, Dee, LaVia & Wright, P.A., Tallahassee, Florida; and Wayne Ross Coment, City Attorney, Vero Beach, Florida,

for Appellee City of Vero Beach

Meredith Deanna Crawford, Assistant County Attorney, Pensacola, Florida,

for Amicus Curiae Escambia County, Florida

Virginia Saunders Delegal, General Counsel, Florida Association of Counties, Inc., Tallahassee, Florida,

for Amici Curiae Florida Association of Counties, Inc. and Florida Association of County Attorneys, Inc.

William Bartow Willingham and Michelle Lynn Hershel, Tallahassee, Florida,

for Amicus Curiae Florida Electric Cooperatives Association, Inc.