W. SHARP, J.
Friends of Matanzas (Matanzas), a not-for-profit tax exempt corporation, appeals from an order of the Department of Environmental Protection (DEP), which dismissed its petition for a formal administrative hearing in two proceedings (consolidated for purposes of this appeal). Matanzas sought to challenge DEP’s decision to issue construction permits to the Department of Transportation (DOT), regarding a proposed extension of a twelve-inch water main for six miles along rights-of-way for U.S. 1 and SR 206 to DOT rest areas on Interstate 95, and a similar proposed extension of a twelve-inch sewer transmission line along the same route, to serve the same rest areas. The DEP denied Matanzas a formal administrative hearing pursuant to section 120.57(1) because Matan-zas failed to allege adequate standing to challenge DEP’s permitting decision. We affirm.
Matanzas claims a substantial number of its members own property or reside in the Crescent Beach area of Anastasia Island, in St. Johns County. One of its primary purposes is to insure that development and building in the area complies with the County’s comprehensive land plan, and to protect and preserve environmental and recreational values of the relatively undeveloped wetlands, water, and island areas nearby. It further makes the point that its members are *439 customers of the potable water and sewer utility system of St. Johns County.
DOT has embarked on a plan to construct the water and sewer lines described above and then donate them to St. Johns County for operation, after they are connected to the County system on the mainland at U.S. 1. The claimed purpose for the project is to provide water and sewer service to visitors at the DOT rest stops. DOT projects the rest stops will serve an additional 10,200 persons by the year 2020. However, the attorney for DOT candidly admitted at oral argument that he thought the reason for the size of the pipes was because ultimately development of homes and other buildings was being contemplated by the County.
In order to be entitled to a formal administrative hearing, Matanzas had to allege and establish that its substantial interests were affected by the DEP’s proposed action in granting the permits. First, it had to show a substantial number of its members would suffer injury, in fact, which is of sufficient immediacy to entitle it to a hearing under Florida Administrative Code Rule 62-103.155 and section 120.57, Florida Statutes, and that the injury is of a type or nature which the proceeding is designed to protect.
Matanzas alleged in its petitions that the proposed construction will have a direct or secondarily adverse effect upon its individual member’s interests as follows:
a. the addition of 10,200 persons would have a serious secondary effect upon the barrier island;
b. the addition of 10,200 persons would have a serious effect on the hurricane evacuation capability of S.R. 206 to evacuate the homes and property of the individual members;
c. the addition of 10,200 persons would cause or facilitate additional residential development in areas containing wetlands and unsuitable hydric[1] soils located on the mainland of St. Johns County lying west of the Matanzas River;
d. in order to meet the conditions of the permit,[2] St. Johns County will incur additional and wasteful maintenance costs, which will result in the detriment of Ma-tanzas’ individual members as ratepayers of St. Johns County Utilities;
e. a substantial number of Matanzas’ members use and enjoy[3] areas which include the immediate vicinity of the proposed project, the wetlands, and other vegetative communities, surface waters and public lands;
f. Matanzas members continue to use, and desire and intend to use in the future, these areas;
g. the direct and secondary effect of the proposed project will diminish the residential, recreational, environmental and scientific value of these areas.
DEP determined that Matanzas failed to satisfy either part of the standing test. The first part of the test deals with the degree of injury and the second with the nature of the injury. AmeriSteel Corp. v. Clark, 691 So.2d 473 (Fla.1997). The second part in this context turns on whether the DEP can or should consider “secondary” effects of issuing a permit. Conservancy, Inc. v. A. Vernon Allen Builder, Inc., 580 So.2d 772 (Fla. 1st DCA 1991); Del Campo v. State Department of Environmental Regulation, 452 So.2d 1004 (Fla. 1st DCA 1984). We do not reach that issue in this case because we do not think Matanzas succeeded in sufficiently alleging the first part of the standing test.
With regard to the first three allegations above, it does not follow that the construction of the sewer and water lines along U.S. 1 and SR 206 and Interstate 95 (underground along the right-of-way) will have any impact on the ability of residents from the beach area to use SR 206, to evacuate in the *440 event of a hurricane. Nor are these lines being built to serve anything more than rest stops off Interstate 95. The 10,200 people projected to be served are not on Anastasia Island.
With regard to the fourth allegation, Matanzas members are rate-paying customers of the County system, but this project is being built by the DOT, and thereafter donated to the County. Construction costs will not be sought from them. Matanzas points out the size of the sewer and water pipes, if installed to serve only the Interstate 95 rest stops, will result in excessive maintenance and costs to operate, unless additional development is allowed. However, DOT will have to bear its fair share of the utility fees. If St. Johns County attempts to surcharge Ma-tanzas’ members for costs properly allocable to the rest stops, the County’s actions can be challenged in other proceedings. This injury is too speculative at this point to frame a legal case or controversy and, in any event, DEP has no control or jurisdiction over this issue.
The last three allegations deal with Matanzas members’ concerns about feared future development and use of the wetlands, and the now undeveloped areas near Crescent Beach and the southern part of Anastasia Island. At this point in time, the County’s Comprehensive Land Use Plan would have to be changed to permit such development. Matanzas points out the extension of the sewer and water lines in their direction makes future alterations to the Plan and future development more likely. Because the installation of water and sewer lines along an existing road right-of-way is outside the purview of “development orders” subject to challenge under section 163.3215, Matan-zas argues it has no effective remedy.
We have some sympathy with Matanzas’ argument, and indeed there may be an oversight with regard to sections 163.3164(b) and 380.04, Florida Statutes. However, this court cannot provide a remedy where the Legislature has failed to do so. Matanzas will have an opportunity to challenge any development which may violate the County’s comprehensive plan, and if the County seeks to alter its plan, it may oppose those measures. However, at this point we do not think Matanzas has sufficiently identified how the issuance of the challenged permits will have an immediate adverse effect on its members’ interests sufficient to justify a formal administrative hearing by DEP.
AFFIRMED.
GOSHORN, J., and LESTER, K.R., Associate Judge, concur.

. Hydric refers to, or contains hydrogen. Hanson, Dictionary of Ecology, at 179.

. The permit requires the maintenance of the water and sewer lines. Matanzas notes that to the extent that St. Johns County does not receive additional revenue, through increased customer demand via development permitting on the barrier island or in the wetlands, the result will be extraordinarily wasteful maintenance costs, which Matanzas members will be forced to pay.

.Involving livelihood, recreational, professional and scientific purpose use and enjoyment of these areas.