860 So.2d 1003 (2003)
Paul D'ALTO, Trustee, Appellant,
v.
STATE of Florida DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellee.
No. 1D02-4579.
District Court of Appeal of Florida, First District.
November 6, 2003.
Rehearing Denied December 11, 2003.
Robert D. Fingar, Esquire of Huey, Guilday, Tucker, Schwartz & Williams, P.A., Tallahassee, for Appellant.
Teri L. Donaldson, General Counsel; Martha Nebelsiek Hertzberg, Assistant General Counsel, Tallahassee, for Appellee.
*1004 BENTON, J.
A landowner appeals the final agency order denying his application to participate in the Petroleum Cleanup Participation Program (PCPP). See § 376.3071(13), Fla. Stat. (2002). We have jurisdiction. See Art. V, § 4(b)(2), Fla. Const.; § 120.68(1), Fla. Stat. (2002). After an informal hearing, the Department of Environmental Protection (DEP) denied the application on the ground that the Early Detection Incentive Program Notification Application he had filed did not contain sufficient information to qualify as a "discharge reporting form" within the meaning of section 376.3071(13)(a)(1), Florida Statutes (2002). We reverse and remand for further proceedings.
In 1986, the Legislature enacted the State Underground Petroleum Environmental Response Act, which created the Inland Protection Trust Fund for assessment and cleanup of discharges of petroleum and petroleum products. Ch. 86-159, § 15, at 675, Laws of Fla. (codified at § 376.3071, Fla. Stat. (Supp.1986)). Designed to "enable the department to respond without delay to incidents of inland contamination related to the storage of petroleum and petroleum products in order to protect the public health, safety, and welfare and [to] minimize environmental damage," ch. 86-159, § 15, at 676, Laws of Fla. (current version at § 376.3071(2)(a), Fla. Stat. (2002)), the Fund financed expedited cleanup of petroleum contamination sites as part of DEP's Early Detection Incentive (EDI) Program. After Mr. D'Alto filed an Early Detection Incentive Program Notification Application on December 30, 1988, one of DEP's inspectors went to the site but did not confirm the presence of petroleum contamination there.[1]
Because there was not enough money to clean up all of the sites identified under the EDI and successor programs,[2] the Legislature created the Petroleum Cleanup Participation Program, a new cost-sharing cleanup program funded in part by a pollutant excise tax on production and importation of petroleum products. See ch. 96-277, § 5, at 1149, Laws of Fla. (codified at § 376.3071(13), Fla. Stat. (Supp.1996)); Fla. S. Comm. on Ways & Means, CS/CS for SB 648 (1996) Staff Analysis 2-3 (April 29, 1996) (on file with Florida State Archives). "To encourage detection, reporting, and cleanup of contamination caused by discharges of petroleum or petroleum products," DEP was directed to "implement a cost-sharing cleanup program to provide rehabilitation funding assistance for all property contaminated by discharges of petroleum or petroleum products occurring before January 1, 1995." Ch. 96-277, § 5, at 1149, Laws of Fla. (codified at § 376.3071(13), Fla. Stat. (Supp.1996)).
Rather than requiring owners of previously reported sites of contamination to file new or separate applications for the PCPP, the Legislature provided that "[t]he department shall accept any discharge reporting *1005 form received prior to January 1, 1995, as an application for [participation in the PCPP], and the facility owner or operator need not reapply." § 376.3071(13)(a)(1), Fla. Stat. (2002) (Emphasis supplied.). The question we are asked to decide on appeal is whether the EDI Program Notification Application that Mr. D'Alto filed with DEP on December 30, 1988, qualifies as a "discharge reporting form."
This is a pure question of law, although we do not write on a blank slate. "Even if somehow problematic, `an agency's interpretation of a statute it is charged with enforcing is entitled to great deference.' Ameristeel Corp. v. Clark, 691 So.2d 473, 477 (Fla.1997)." Morris v. Div. of Ret., 696 So.2d 380, 384 (Fla. 1st DCA 1997). On the other hand, "judicial adherence to the agency's view is not demanded when it is contrary to the statute's plain meaning." PAC for Equal. v. Dep't of State, Fla. Elections Comm'n, 542 So.2d 459, 460 (Fla. 2d DCA 1989). See also § 376.315, Fla. Stat. (2002) ("Sections 376.30-376.319, being necessary for the general welfare and the public health and safety of the state and its inhabitants, shall be liberally construed to effect the purposes set forth under ss. 376.30-376.319....").
DEP concedes that a blank Early Detection Incentive Program Notification Application form, which is practically identical to the later adopted "Discharge Reporting Form" in use when the statute was enacted, is a form of the type the statute contemplates. But DEP complains that Mr. D'Alto failed to specify the cause of the leak and the type of petroleum product discharged, and to give an estimate of the number of gallons lost: While not ignoring any question, he answered "unknown" to five of the twelve questions the form asked by selecting "unknown" from a preprinted list of response options.
The form does, however, identify what was surely the source of the contaminationan abandoned Texaco filling station on the propertyand the information on the form was enough to trigger a site visit by a departmental inspector. Even though technical problems kept the inspector from verifying that there was petroleum contamination on that visit, the contamination has since been independently verified; and the parties have stipulated that the contamination occurred prior to January 1, 1995, by which time the gasoline tanks had been excavated and removed. At oral argument, DEP could not suggest any way in which any lack of information on the form had prejudiced it. DEP is, of course, free to demand any additional information the statute and rules contemplate.
Whether Mr. D'Alto will ultimately be determined eligible to participate in the PCPP is not before us and is for DEP to determine on remand in the course of further proceedings, whether "free form" or otherwise. But we reverse DEP's decision to deny Mr. D'Alto's application on the ground that his Early Detection Incentive Program Notification Application form did not contain enough information to constitute a discharge reporting form within the meaning of section 376.3071(13)(a)(1), Florida Statutes (2002).
Reversed and remanded.
ALLEN and DAVIS, JJ., CONCUR.
NOTES
[1] Mr. D'Alto did not contest DEP's later denial of his application to participate in the EDI program, but contends here that the filing of the form "notification application" renders him eligible for consideration for participation in the PCPP.
[2] The EDI program was limited to sites contaminated by leaking petroleum storage systems reported to the department between July 1, 1986, and midnight on December 31, 1988. See § 376.3071(9), Fla. Stat. (2002). The Fund has also financed subsequent cleanup programs. See, e.g., Florida Petroleum Liability and Restoration Insurance Program, ch. 89-188, § 5, at 779, Laws of Fla. (codified at § 376.3072, Fla. Stat. (1989)); Abandoned Tank Restoration Program, ch. 90-98, § 12, at 252, Laws of Fla. (current version at § 376.305(6), Fla. Stat. (2002)).