691 So.2d 473 (1997)
AMERISTEEL CORPORATION, f/k/a Florida Steel Corporation Appellant,
v.
Susan F. CLARK, et al., Appellees.
No. 88427.
Supreme Court of Florida.
April 10, 1997.
*475 Richard J. Salem and Marian B. Rush of Salem, Saxon & Nielsen, P.A., Tampa; and Peter J.P. Brickfield and James W. Brew of Brickfield, Burchette & Ritts, P.C., Washington, D.C., for Appellant.
Robert D. Vandiver, General Counsel and David E. Smith, Director of Appeals, Florida Public Service Commission, Tallahassee, Kenneth A. Hoffman and William B. Willingham of Rutledge, Ecenia, Underwood, Purnell & Hoffman, P.A., Tallahassee and Bruce Page, Office of General Counsel, Jacksonville, on behalf of Jacksonville Electric Authority; and Mark K. Logan of Bryant, Miller & Olive, Tallahassee and Edward Tancer, North Palm Beach, on behalf of Florida Power & Light Company, for Appellees.
PER CURIAM.
This case is before this Court on direct appeal brought by AmeriSteel Corporation (AmeriSteel), formerly known as Florida Steel Corporation, to review Order No. PSC-96-0755-FOF-EU of the Public Service Commission (the Commission). We have jurisdiction under article V, section 3(b)(2), of the Florida Constitution.

FACTS
The record reflects that on March 19, 1963, Jacksonville Electric Authority (JEA) and Florida Power & Light Company (FPL) entered into a territorial agreement which established a boundary line allocating exclusive service territory between JEA and FPL in Duval, Clay, Nassau and St. Johns Counties.
Subsequently, in 1974, AmeriSteel established its plant in Duval County. Although within the City of Jacksonville's municipal limits, AmeriSteel chose to locate its plant in FPL's exclusive service territory as defined under the 1963 agreement. In 1979, JEA and FPL entered into a second territorial agreement pursuant to which the utilities agreed to reaffirm and maintain the existing *476 territorial boundaries initially established in the 1963 agreement.
From time to time over the thirty years since the 1963 agreement, JEA has permitted FPL to serve a relatively limited number of customers located in JEA's territory, and FPL has similarly permitted JEA to provide service to a smaller number of customers located in FPL's territory. Such interim service arrangements typically were made where one utility's distribution lines were closer to the customer and the utility in whose territory the customer was located would have had to cross or duplicate lines in order to provide service in its territory.
The genesis of AmeriSteel's complaints at issue in this case stems from a petition filed by JEA against FPL on March 20, 1995, to resolve a territorial dispute concerning service to customers in St. Johns County. That dispute was ultimately resolved in October 1995, when JEA and FPL filed with the Commission a joint motion to approve a new, broad-based territorial agreement embodying the realignment of service areas which AmeriSteel protests here. Without changing the boundary lines between the utilities, the new territorial agreement between JEA and FPL provides for the transfer of all customers currently served by one utility in the other utility's territory so that all customers located in the territory of each utility will be served by that utility. Specifically, the agreement resolves the interim service issue raised in JEA's petition by requiring the transfer of 390 FPL customers in St. Johns County (located in JEA's territory under the 1963, 1979 and current agreements) to JEA. The agreement also requires the transfer of fifty-seven FPL customers in Duval County (all located in JEA's territory under the three agreements) to JEA and the transfer of sixteen JEA customers (located in FPL's prior and current territory) to FPL. Finally, the agreement requires the relocation and construction of facilities which will enhance the system reliability of each utility and eliminate the existing uneconomic duplication of facilities. Because this new agreement between JEA and FPL once again reaffirms the boundaries between the utilities established in 1963, it in no way affects AmeriSteel but merely preserves the status quo that AmeriSteel will continue to be served by FPL, just as it always has been.
On November 8, 1995, the Commission staff filed its recommendation to approve the territorial agreement which was scheduled for consideration by the Commission on November 21, 1995. On that date, AmeriSteel appeared before the Commission and requested that the Commission defer consideration of the JEA-FPL proposed territorial agreement. AmeriSteel's request was granted. On December 4, 1995, AmeriSteel filed a motion to intervene, claiming a substantial corporate interest that would be directly affected by Commission approval of the agreement. As its basis for intervention, AmeriSteel alleged that, unlike the relatively low rates AmeriSteel enjoyed when it built its facility in FPL's service territory in 1974, FPL has become "a very high cost utility." AmeriSteel maintained in its motion that FPL's expensive rates are one factor threatening the long-term viability of its Jacksonville facility, and the possible closure of the Jacksonville facility would cause a loss of jobs and hurt the local economy. The Commission granted AmeriSteel's second request for deferral the following day, December 5, 1995.
On February 5, 1996, the Commission denied AmeriSteel's formal motion for intervention, concluding that AmeriSteel lacked legal standing to intervene as a party for the purpose of challenging the proposed territorial agreement. However, the Commission's order denying intervention expressly apprised AmeriSteel of its opportunity to participate and comment on the proposed territorial agreement at the February 6, 1996, agenda conference pursuant to section 366.04(4), Florida Statutes (1995), and Rules 25-6.0442(1) and 25-22.0021(1) of the Florida Administrative Code.
At that conference, the Commission heard comments from the Commission staff, JEA, FPL, AmeriSteel and other interested persons, and subsequently voted to approve the proposed territorial agreement. The Commission issued its proposed agency action ("PAA") approving the territorial agreement on February 14, 1996. AmeriSteel filed a *477 petition protesting the Commission's preliminary approval of the new agreement. Oral argument on AmeriSteel's petition was held before the Commission on May 21, 1996. On June 10, 1996, the Commission dismissed AmeriSteel's petition, reiterating that AmeriSteel lacked standing to challenge the JEA-FPL territorial agreement. AmeriSteel now appeals the Commission's final order dismissing its petition and approving the territorial agreement.

LAW AND ANALYSIS

Standing
We begin with the well-settled rules that Commission orders come to this Court "clothed with the statutory presumption that they have been made within the Commission's jurisdiction and powers, and that they are reasonable and just and such as ought to have been made." United Tel. Co. v. Public Serv. Comm'n, 496 So.2d 116, 118 (Fla.1986) (quoting General Tel. Co. v. Carter, 115 So.2d 554, 556 (Fla.1959)); see also City of Tallahassee v. Mann, 411 So.2d 162, 164 (Fla.1981). Moreover, an agency's interpretation of a statute it is charged with enforcing is entitled to great deference. The party challenging an order of the Commission bears the burden of overcoming those presumptions by showing a departure from the essential requirements of law. Mann, 411 So.2d at 164; Shevin v. Yarborough, 274 So.2d 505, 508 (Fla.1973). We will approve the Commission's findings and conclusions if they are based on competent substantial evidence, Fort Pierce Utils. Auth. v. Beard, 626 So.2d 1356, 1357 (Fla.1993), and if they are not clearly erroneous. PW Ventures, Inc. v. Nichols, 533 So.2d 281, 283 (Fla.1988).
In the order at issue here, the Commission denied AmeriSteel formal standing to intervene as a party in proceedings before the Commission to approve the JEA-FPL proposed territorial agreement, finding that AmeriSteel failed to meet the two-pronged test for standing under Agrico Chemical Co. v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2d DCA 1981). AmeriSteel contends that the Commission abused its discretion in denying the corporation standing to intervene as a party because, as a resident consumer of electricity in the City of Jacksonville, AmeriSteel is entitled to seek service from JEAthe municipal utility where it is economical and practical for JEA to provide it, and to challenge JEA's delegation of its duty to provide service to municipal consumers to another utility. AmeriSteel maintains that because of the significant price differential between JEA and FPL for electrical service, the corporation has a substantial interest in the outcome of the proceeding as it affects AmeriSteel's ability to obtain service from JEA and the continued viability of its Jacksonville plant. Finally, AmeriSteel maintains that the Commission erred in denying it standing to intervene because the Commission's proceedings to approve the JEA-JPL territorial agreement provide the exclusive forum for resident electricity customers, like AmeriSteel, to compel service from the municipal electric system JEA.
Only persons whose substantial interests may or will be affected by the Commission's action may file a petition for a 120.57 hearing. See § 120.57, Florida Statutes (1995); Fla. Admin. Code R. 25-22.029. To demonstrate standing to intervene under Agrico, a petitioner must demonstrate:
1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and 2) that his substantial injury is of a type or nature which the proceeding is designed to protect.
406 So.2d at 482. As the district court explained in that case, the first aspect of the test deals with the degree of injury. The second deals with the nature of the injury. Id.
We find that AmeriSteel cannot meet either prong of the Agrico test. First, as the Commission correctly concluded in its order, AmeriSteel's claim that the higher rates it pays to FPL for electricity are one factor threatening the continued viability of its Jacksonville plantand the related claim that relocation of its plant would cause an economic detriment to the City of Jacksonvilleis not an injury in fact of sufficient immediacy to entitle AmeriSteel to a 120.57 hearing. See International Jai-Alai Players *478 Ass'n v. Florida Pari-Mutuel Comm'n, 561 So.2d 1224, 1225-26 (Fla. 3d DCA 1990) (fact that change in playing dates might affect labor dispute, resulting in economic detriment to players, was too remote to establish standing); Florida Soc'y of Opthalmology v. State Board of Optometry, 532 So.2d 1279, 1285 (Fla. 1st DCA 1988) (some degree of loss due to economic competition is not of sufficient "immediacy" to establish standing); Village Park Mobile Home Ass'n, Inc. v. State, Dep't of Bus. Regulation, 506 So.2d 426, 434 (Fla. 1st DCA 1987) (speculations on the possible occurrence of injurious events are too remote to warrant inclusion in the administrative review process). AmeriSteel has been an FPL customer since it located its plant in FPL's service territory in 1974 and its position as a customer of FPL remains the same under the new territorial agreement approved by the Commission. Thus, AmeriSteel has failed to meet the first prong of the Agrico test for standing because its corporate interests remain completely unaffected and in no way injured by the JEA-FPL territorial agreement.
As to the second prong of the Agrico test for standing, AmeriSteel's claimed interest in these proceedings is not the kind designed to be protected by the Commission's proceedings to approve territorial agreements between utilities. The Commission has jurisdiction "[t]o approve territorial agreements between and among rural electric cooperatives, municipal electric utilities, and other electric utilities under its jurisdiction." § 366.04(2)(d), Fla. Stat. (1995). This Court has stated that the Commission's power to approve territorial agreements and resolve territorial disputes does not constitute an unlawful delegation of legislative authority because the Commission is guided in such cases by a statutory mandate to avoid "further uneconomic duplication of generation, transmission, and distribution facilities." Gainesville-Alachua County Reg'l Elec., Water & Sewer Utils. Bd. v. Clay Elec. Coop., Inc., 340 So.2d 1159, 1162 (Fla.1976) (quoting § 366.04(3), Fla. Stat. (1975)).
Although sections 366.04(2), (5), and 366.05(7), (8), Florida Statutes (1995), parts of what is informally called the "Grid Act," see ch. 74-196, Laws of Fla., do not extinguish a municipality's prerogative to provide electric service within its municipal limits, this does not mean that a municipal electric service like JEA has an absolute duty to serve all electric consumers within its boundaries irrespective of the public interest concerns the Grid Act and the Commission's proceedings to approve territorial agreements are designed to protect. Rather, the Commission's charge in proceedings concerning territorial agreements is to approve those agreements which ensure the reliability of Florida's energy grid and to prevent needless uneconomic duplication of electric facilities so long as the agreement works "no detriment to the public interest." Utilities Comm'n of New Smyrna Beach v. Florida Pub. Serv. Comm'n, 469 So.2d 731 (Fla.1985).
Moreover, as we explained in New Smyrna Beach,
The legal system favors the settlement of disputes by mutual agreement between the contending parties. This general rule applies with equal force in utility service agreements. Territorial agreements by public utilities have been approved because they serve both the interests of the public and the utilities by minimizing unnecessary duplication of facilities and services.
Id. at 732 (citing Storey v. Mayo, 217 So.2d 304 (Fla.1968)).
Thus, we conclude that the Commission did not abuse its discretion in finding that a proceeding to approve a territorial agreement is not the proper forum for intervention by a resident electricity consumer like AmeriSteel to compel service from the municipal utility based on speculative economic interests. We note, however, that although AmeriSteel was denied standing to intervene as a party in this proceeding, the Commission was not deaf to AmeriSteel's concerns. Rather, the Commission twice deferred consideration of the JEA-FPL territorial agreement upon AmeriSteel's request so the corporation could bring its concerns before the Commission. In addition, AmeriSteel was invited to, and did, comment on the proposed agreement at the February 1996 agenda conference before the Commission. Finally, the *479 Commission entertained AmeriSteel's petition protesting the preliminary approval of the JEA-FPL agreement.

Due Process
AmeriSteel argues that the Commission further erred by failing to require JEA and FPL to provide public notice that their settlement discussions would encompass matters beyond the scope of JEA's initial complaint against FPL concerning customers in St. Johns County. AmeriSteel maintains that the lack of notice of the proceedings violated the corporation's rights to due process as an affected customer because it was prohibited from participating in the proceeding until all issues of consequence had been settled by the utilities and preliminarily approved by the Commission.
Section 120.57, Florida Statutes (1995), and Rule 25-22.029 of the Florida Administrative Code, entitled "Point of Entry into Proposed Agency Action Proceedings," require the Commission to give notice and an opportunity to be heard to persons affected by its actions. Similarly, Rule 25-6.0440(1) of the Florida Administrative Code, which guides the Commission's approval of territorial agreements, requires the petitioning utilities to provide "assurances that the affected customers have been contacted and the differences [in rates and service] explained."
The record reflects that all persons required to be notified of the proposed territorial agreement between JEA and FPL received proper notice. The utilities advised customers who would change service providers pursuant to the agreement of the pending transfer; the Commission gave notice that the approval of the territorial agreement was scheduled for its December 5, 1995, agenda conference, and subsequently gave notice at the February 6, 1996, agenda conference after the matter had been deferred pursuant to AmeriSteel's request. AmeriSteel, who remained wholly unaffected by the proposed territorial agreement between the utilities, received notice of the Commission's proposed agency action order approving the territorial agreement and exercised its rights to file a protest in response.
Accordingly, we reject AmeriSteel's claim that its due process rights were violated because it was not notified that JEA and FPL, in their private negotiations, had decided to resolve their dispute through a broad-based territorial agreement including areas other than those in St. Johns County. There simply is no requirement in chapter 366, the Administrative Procedure Act, or Florida's Administrative Code that two negotiating utilities publish notice of the substance and scope of their ongoing negotiations and invite the participation of interested persons such as AmeriSteel. Nor is there any requirement that the Commission provide such notice.
Consequently, we approve the Commission's order rejecting AmeriSteel's claim that its due process rights have been violated. AmeriSteel was in no way precluded from exercising any of its procedural rights by the process followed by the Commission in approving the agreement. If AmeriSteel had demonstrated standing, it would have been able to obtain a hearing, conduct discovery and present evidence challenging any aspect of the agreement pursuant to section 120.57. However, AmeriSteel's failure to demonstrate standing to intervene as a party in this proceeding does not somehow amount to a failure on the part of the Commission to provide notice.

The Commission's Final Order
As its last claim of error, AmeriSteel argues that because notice in this proceeding was inadequate and it was improperly denied an opportunity to protect its substantial interest in obtaining electric service from JEA, the Commission's final order was not based on competent, substantial evidence. Alternatively, AmeriSteel requests this Court to issue a ruling that the Commission's authority to resolve territorial disputes does not preclude AmeriSteel from pursuing other remedies in the courts to protect its interests in receiving electric service from JEA.
First, we find the Commission's order is based on competent and substantial evidence that the territorial agreement works no detriment to the public interest *480 because the agreement eliminates all existing customers served by one utility in the other utility's service area and effectively separates the two utilities throughout their four-county contiguous operating areas. See Order No. PSC-96-0755-FOF-EU. In addition, the Commission was fully apprised of AmeriSteel's corporate interest in obtaining lower electricity rates before deciding to approve the JEA-FPL agreement. Finally, we also reject AmeriSteel's alternative request that we speculatively and prospectively approve any legal action it may take in the future to obtain electrical service from JEA.
Accordingly, we affirm the order of the Commission.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.