887 So.2d 1200 (2004)
WEST FLORIDA ELECTRIC COOPERATIVE ASSOCIATION, INC., Appellant,
v.
E. Leon JACOBS, Jr., etc., et al., Appellees.
No. SC02-176.
Supreme Court of Florida.
October 21, 2004.
*1202 John H. Haswell of Chandler, Lang, Haswell & Cole, P.A., Gainesville, FL; and Frank E. Bondurant, Marianna, FL, for Appellant.
Harold McLean, General Counsel, Richard C. Bellack, Associate General Counsel, Florida Public Service Commission, Tallahassee, FL, for Appellee Florida Public Service Commission.
Jeffrey A. Stone, Russell A. Badders and R. Andrew Kent of Beggs & Lane, LLP, Pensacola, FL, for Appellee Gulf Power Company.
CANTERO, J.
We review a decision of the Florida Public Service Commission settling a territorial dispute between two utilities competing to provide electric service to a natural gas company's compression station, located in a rural area of Washington County. We have jurisdiction. See art. V, § 3(b)(2), Fla. Const. The issues are (1) whether, in awarding service to appellee Gulf Power Company, the commission failed to consider the appellant's historical presence in the area and gave undue weight to the customer's preference; and (2) whether the commission departed from the essential requirements of law in drawing the territorial boundary around the footprint of the motors of the new compression station, rather than around the entire rural area. We affirm.

*1203 I.
Appellant West Florida Electric Cooperative Association provides electric service in Washington County to homes and farms in a rural area within a four-mile radius of a location known as Hinson's Crossroads. It provides 120/240 volt electric service to Florida Gas Transmission (FGT), which owns and operates a natural gas-fired gas compression station in the area. The station is part of FGT's natural gas pipeline, which runs through Florida. Appellee Gulf Power also provides electric service in Washington County, although not in the Hinson's Crossroads area.
In the mid-1990s, FGT decided to build another compression station on its 35- acre site, which would use two 15,000-horsepower electric motors. FGT contracted with Enron Compression Services (ECS) to provide the compression, i.e., the mechanical energy from the motors. ECS in turn sought to contract with Gulf Power to provide electricity to drive the motors. When ECS and Gulf Power requested the commission's approval through a petition for declaratory statement, West Florida petitioned the commission for resolution of the territorial dispute.
Section 366.04, Florida Statutes (2000), grants the commission authority to resolve territorial disputes between utilities. The commission's overarching concern in settling such disputes is the avoidance of uneconomic duplication. Section 366.04(5) provides that the commission "shall further have jurisdiction over the planning, development, and maintenance of a coordinated electric power grid throughout Florida to assure ... the avoidance of further uneconomic duplication of generation, transmission, and distribution facilities." See Gulf Coast Elec. Coop., Inc. v. Johnson, 727 So.2d 259, 264 (Fla.1999) (stating that commission "is to be guided by this statutory mandate to avoid further uneconomic duplication of facilities in its decisions regarding territorial agreements and territorial disputes"). The statute also outlines certain factors that the commission "may consider, but not be limited to consideration of," in resolving a dispute. § 366.04(2)(e), Fla. Stat. (2000). These are "the ability of the utilities to expand services within their own capabilities and the nature of the area involved, including population, the degree of urbanization of the area, its proximity to other urban areas, and the present and reasonably foreseeable future requirements of the area for other utility services." Id.
The commission's regulations implementing section 366.04 are contained in the Florida Administrative Code. They list the following four nonexclusive factors that the commission may consider in resolving territorial disputes:
(a) the capability of each utility to provide reliable electric service within the disputed area with its existing facilities and the extent to which additional facilities are needed;
(b) the nature of the disputed area including population and the type of utilities seeking to serve it, and degree of urbanization of the area and its proximity to other urban areas, and the present and reasonably foreseeable future requirements of the area for other utility services;
(c) the cost of each utility to provide distribution and subtransmission facilities to the disputed area presently and in the future; and
(d) customer preference if all other factors are substantially equal.
Fla. Admin. Code R. 25-6.0441(2).
Pursuant to these authorities, the commission held a hearing to resolve the dispute and applied the factors listed in rule 25-6.0441(2). Regarding factors (a) and *1204 (c), West Florida and Gulf Power stipulated, and the commission found, that neither utility could adequately serve the new station, that the estimated cost to build the required six-mile transmission line would be the same for both utilities (about $5.5 million), and that both had equal access to Gulf Power's 230 kilovolt (kV) system, which was needed to power the new motors. The commission also found that both utilities could provide reliable service through the additional facilities. Regarding factor (b), the commission found that both utilities served rural areas in Washington County, such as the disputed area, but that the needs of the new compression station were unique because the new motors required 230 kV service. The commission accepted West Florida's claim that the dispute encompassed the entire Hinson's Crossroads area. It noted, however, that no territorial agreement existed between the utilities in the disputed area and concluded that it need not establish a territorial boundary around Hinson's Crossroads. Instead, it drew the boundary around the footprint of the two electric motors of the new compression station.
The commission thus determined that none of these factors substantially favored either utility. As a result, the commission found that factor (d)  ECS's undisputed preference for Gulf  was determinative. The commission further found that neither economic nor uneconomic duplication of services would result from an award of service to Gulf Power. Based on these findings, the commission awarded service to Gulf Power.

II.
Commission orders come to this Court clothed with the presumption that they are reasonable and just. Johnson, 727 So.2d at 262. The party challenging such an order thus must show a departure from the essential requirements of law. Ameristeel Corp. v. Clark, 691 So.2d 473, 477 (Fla.1997). This Court will approve the commission's findings and conclusions if they are based upon competent, substantial evidence and are not clearly erroneous. Id.
West Florida first argues that the commission's order is not supported by competent, substantial evidence. It concedes that factors (b) and (c) are not at issue. It also does not contest the commission's findings as to factor (a) (service reliability) except to argue that the commission should have weighed the utility's testimony that awarding service to West Florida potentially would result in more reliable service to West Florida's other customers. As the commission found, however, West Florida already provided reliable service to the area and would continue to do so. Accordingly, we find that competent, substantial evidence supports the commission's finding of no additional reliability benefit.
As to factor (d) (customer preference), West Florida concedes that ECS prefers Gulf Power. It argues, however, that by considering ECS's preference for Gulf Power to be determinative, the commission permitted "customer choice" to determine selection of the service provider, in contravention of cases from this Court. We disagree. We previously have held that customer preference should be considered a significant factor where the other factors in rule 25-6.0441 are substantially equal. See Gulf Coast Elec. Coop., Inc. v. Clark, 674 So.2d 120, 123 (Fla.1996). Although we also have warned that an "individual has no organic, economic or political right to service by a particular utility merely because he deems it advantageous to himself," Lee County Elec. Coop. v. Marks, 501 So.2d 585, 587 (Fla.1987), the commission's order in no *1205 way violates this principle. The commission followed section 366.04, Florida Statutes, and rule 25-6.0441(2) by assessing a number of factors. Determining in this case that factors (a) through (c) of rule 25-6.0441(2) were "substantially equal," the commission then considered subsection (d), the customer's preference, and found that factor to be determinative. We hold that competent, substantial evidence supports the commission's findings and that the commission did not depart from the essential requirements of law by considering customer preference.

III.
West Florida also argues that all relevant factors were not substantially equal so as to allow the commission to consider customer preference. It contends that the commission failed to consider the utility's historical presence in the area. Neither the statute nor the rule, however, requires the commission to consider a utility's historical presence in an area. See § 366.04, Fla. Stat. (2000); Fla. Admin. Code R. 25-6.0441. Because the listed factors are not exclusive, however, the commission is free to consider other factors, including historical presence. See id.
The governing statute charges the commission to avoid "further uneconomic duplication of generation, transmission, and distribution facilities." § 366.04(5), Fla. Stat. (2000). The historical presence of one utility in an area thus may be relevant in determining whether uneconomic duplication would result from an award of service to another. Accordingly, the commission has accorded some weight to a utility's historical presence in resolving territorial disputes where it found that an award of service to the competing utility resulted in uneconomic duplication or greater costs of service. See, e.g., In re Territorial Dispute Between Suwannee Valley Elec. Coop. and Fla. Power Corp., 87 F.P.S.C. 11:213 (1987) (awarding service area to Florida Power Corporation where there was no uneconomic duplication but Florida Power provided historic service and was more economical); In re Petition of Gulf Coast Elec. Coop., 86 F.P.S.C. 5:138 (1986) (awarding service to Gulf Coast Electric Cooperative where Gulf Coast historically served area and Gulf Power's costs to serve were excessive and caused uneconomic duplication); In re Petition of Suwannee Valley Elec. Coop., 83 F.P.S.C. 90 (1983) (awarding service area, which Suwannee Valley Electric Cooperative historically served, to Suwannee Valley where award to other utility would result in greater costs to serve and uneconomic duplication).
Where no territorial agreement exists and no uneconomic duplication would result, however, utilities may serve adjacent areas. In this case, the utilities stipulated that construction of facilities needed to provide service to the motors at the new compression station would not cause uneconomic duplication of electrical facilities and that costs would be the same. Therefore, West Florida's historical presence had little or no relevance. The commission was well within its discretion in restricting its consideration to the factors listed in the rule.
Nevertheless, the commission did consider West Florida's historical presence, although it ultimately assigned it little weight. The commission acknowledged that West Florida had long served rural customers in the Hinson's Crossroads area with 120/240 volt service. It concluded, however, that the power needs of the electric motors were "quite unique" because, unlike anything in the disputed area, the motors required 230 kV service. West Florida does not contest this finding. The *1206 commission also acknowledged that Gulf Power owned the nearest source to serve this "unique load," although both utilities had access to this source and would build the same facilities to serve the motors reliably. Therefore, not only did the commission consider West Florida's historical presence, it found that the unique character of the service needed in this case rendered irrelevant West Florida's different type of service to the area.
At its heart, West Florida's claim is that the commission should have assigned dispositive weight to its historical presence in the area. It is not this Court's task, however, to reweigh the evidence and the factors considered. See Panda-Kathleen, L.P. v. Clark, 701 So.2d 322, 328 (Fla.1997) (stating that review of commission orders is to determine whether they are supported by competent, substantial evidence or depart from the essential requirements of law, and this Court "will not reweigh or reevalutate the evidence presented to the commission"). We cannot say that the commission's determination in this regard departed from the essential requirements of law.

IV.
West Florida next contends that the commission erred by failing to draw a territorial boundary around the entire disputed area of Hinson's Crossroads. This Court has recognized, however, "that the [commission] is not required as a matter of law to establish territorial boundaries in order to resolve a territorial dispute that does not involve service to current or future identifiable customers." Johnson, 727 So.2d at 264. In Johnson, we affirmed the commission's refusal to draw territorial boundaries to establish exclusive service areas where no dispute existed over service to a current or future identifiable customer, either where the utilities were commingled or in the undeveloped areas. In this case, the parties stipulated that service to the electric motors was the only present and reasonably foreseeable future requirement of the area in dispute. Therefore, because this dispute concerns one identifiable facility/customer, we find no error in the commission's refusal to draw a boundary around the Hinson's Crossroads area. See id. (upholding commission's decision not to draw territorial boundary where "it is unclear where future growth will occur"). Cf. In re Petition to Resolve Territorial Dispute with Clay Elec. Coop., 98 F.P.S.C. 1:671 (1998) (declining to limit disputed area to single facility's property boundary because of potential for future conflict and uneconomic duplication upon development of entire industrial park). Moreover, in light of the utilities' stipulations, the unique character of the power requirements in this case, and the commission's finding that no uneconomic duplication will result if Gulf Power provides the service, the commission did not depart from the essential requirements of law in drawing a discrete boundary around the electric motors involved. We recognize that West Florida will supply the 120/240 volt requirements of the station in which the motors are housed, just as it already supplies this service to the existing station, but we cannot say that the commission's decision constitutes clear error.
Finally, West Florida claims that drawing the boundary around the motors contravenes the law because territorial disputes do not involve customers but geographic areas. A territorial dispute is a disagreement over which utility will serve a geographic area. Fla. Admin. Code R. 25-6.0439. Service to an area necessarily means service to customers. In Johnson, 727 So.2d at 264, we affirmed the commission's authority, as a matter of law, to *1207 refuse to draw a territorial boundary where there was no actual dispute over any customer. In addition, it is not unusual for the commission to resolve a territorial dispute by determining which utility will serve a single customer. In Gulf Coast Electric Cooperative, Inc. v. Clark, 674 So.2d at 121, 123, for example, the territorial dispute between two utilities arose over which would serve a prison to be built in Washington County, and only service to this customer was decided. Accordingly, the commission's drawing of the discrete territory does not constitute a departure from the essential requirements of law.

V.
For the foregoing reasons, we affirm the order of the commission awarding service to Gulf Power.
It is so ordered.
PARIENTE, C.J., and WELLS and ANSTEAD, JJ., concur.
LEWIS, J., dissents with an opinion, in which QUINCE, J., concurs.
QUINCE, J., dissents with an opinion, in which LEWIS, J., concurs.
LEWIS, J., dissenting.
While I concur wholeheartedly in the dissenting opinion of Justice Quince, I write separately to express my specific reasons for dissenting from the rigidly constructed review given this case by the majority. As advocated by Justice Quince, I would reverse the final order of the Public Service Commission below and adopt the reasoning enunciated by Commissioner Palecki in his dissent.
For more than half a century, West Florida Electric Cooperative ("West Florida") has supplied the residents and businesses located in the Hinson's Crossroads area of Washington County with reliable, safe electric power. Extremely germane to the instant case is the fact that West Florida has served this specific thirty-five acre tract at issue here since 1962. The instant action arose in 2001 when Florida Gas Transmission ("FGT"), an electric power customer, sought to employ Gulf Power Company ("Gulf Power") to provide power services to a new compressor station to be installed "next to FGT's existing compressors." In re Petition to Resolve Territorial Dispute with Gulf Power Co. in Washington County by West Florida Electric Coop. Ass'n., Inc., Docket No. 010441-EU, Order No. PSC-01-2499-FOF-EU, at 2, 2001 WL 1674066, at * 1 (F.P.S.C., Dec. 21, 2001).
In what must have been a concerted effort to ignore West Florida's longstanding service to FGT and the surrounding rural area, the Public Service Commission ("PSC") analyzed the instant territorial dispute through considering only the four factors detailed in rule 25-6.0441(2) of the Florida Administrative Code as though this property and customer had never before received electric service. Under Florida law, the PSC is not limited in its analysis to the specifically enunciated factors of Rule 25-6.0441(2). See Gulf Power Co. v. Pub. Serv. Comm'n, 480 So.2d 97, 98 (Fla.1985); § 366.04, Fla. Stat. (2001). In turn, the majority of this Court now approves the action taken by the PSC, inflexibly refusing to recognize any consideration outside of those detailed with particularity in the Code.
As concluded by Justice Quince and Commissioner Palecki, I am convinced that the Public Service Commission should not have considered customer preference, the fourth factor listed in rule 25-6.0441(2). The PSC has long considered an electric power utility's historical record of service to a territorial area when resolving disputes, and in the instant case, this well-settled *1208 additional factor most certainly weighs heavily in West Florida's favor but has been ignored by the commission and the majority here. Thus, the balance of factors to be considered when resolving territorial disputes is not "substantially equal," and reference to consumer preference, factor (d) of rule 25-6.0441(2), was unnecessary. Also, while not articulated by Commissioner Palecki in his dissent, the rural and sparsely populated nature of both Hinson's Crossroads and Washington County has created a situation in which West Florida's provision of electric power has likely been more steadfast than exceedingly profitable.
In the face of West Florida's longstanding service to the people and businesses of Hinson's Crossroads, the Public Service Commission approved an arrangement under which only the territory underneath two compressor-powering motors was ceded to Gulf Power, a very interesting but unprecedented selective analysis. Because Gulf Power and FGT succeeded in convincing the PSC that the territory should be defined in this obtuse and illogical way, a situation was created in which the factors codified in rule 25-6.0441(2) favored the previously entirely foreign Gulf Power. This strategic defining of the "area of dispute," coupled with a nearly blind devotion by a majority of the PSC to the specific factors of rule 25-6.0441(2), allowed for the extraordinary invasion of West Florida's service territory by Gulf Power solely for the purpose of providing electric power to what is likely to become the single largest consumer of electric power within West Florida's geographic territory.
Despite the compelling facts of the instant case, and the PSC's obvious disregard for West Florida's history of service to the geographical customer area at issue, the Court today simply duplicates the error perpetrated by the Public Service Commission. Just as the commission did below, today's majority chooses to analyze the correctness of the PSC's order with reference only to the factors specifically listed in rule 25-6.0441(2). In my view, this devotion solely to the text of the rule has directed the majority to approval of an exceedingly absurd result which could not have been anticipated by the drafters of this rule. Indeed, in effect, today this Court allows an abrogation of the principle that an individual customer "has no organic, economic or political right to service by a particular utility merely because he deems it advantageous to himself." Storey v. Mayo, 217 So.2d 304, 307-08 (Fla.1968); see also Lee County Elec. Coop. v. Marks, 501 So.2d 585, 587 (Fla.1987). While Storey and Marks mandate that a customer should not have the power to choose the provider of its electricity, this Court's decision today certainly allows FGT, through absurd territorial definition and slavish devotion to the specific text of rule 25-6.0441(2), to do precisely that.
Because I cannot concur with the majority's narrow and rigid analysis, which does not recognize the significance of West Florida's history of service to the geographical area at issue, I do not join the majority opinion. Further, I fear that today's decision is a significant step towards unmeasured competition and large commercial customer poaching in the electric power provision industry. Because I am convinced that the Legislature never intended to facilitate this sort of economic contention, and, in fact, intended to discourage and prohibit it, I dissent. Commissioner Palecki was eminently correct in the analysis as quoted by Justice Quince.
QUINCE, J., concurs.
QUINCE, J., dissenting.
I dissent from the majority's decision affirming the order of the Public Service Commission (PSC) awarding the disputed electrical service area to Gulf Power Company *1209 (Gulf Power). I agree with the dissenting commissioner's view that the PSC erred in failing to evaluate the historical presence of the utilities in the service area before making a determination.
As Commissioner Michael A. Palecki pointed out in his dissent, the commission staff made the recommendation that the West Florida Electric Cooperative (West Florida) be awarded the right to provide service to the disputed site. In re Petition to Resolve Territorial Dispute with Gulf Power Company in Washington County by West Florida Electric Cooperative Ass'n, Inc., Docket No. 010441-EU, Order No. PSC-01-2499-FOF-EU, at 12, 2001 WL 1674066 at * 7 (F.P.S.C., Dec. 21, 2001). The area in dispute is in the midst of territory that has been serviced by West Florida since 1946. Gulf Power's nearest customer, on the other hand, is over four miles away from the territory to be served. In making the decision to award the area to Gulf Power, the PSC did not consider the history of service that West Florida had in this area. While historic presence is not a statutory factor or a factor outlined in the rules that must be considered in this situation, the PSC has in fact used historic presence in its evaluation of other territorial disputes. I agree with the dissenting commissioner when he said:
Rule 25-6.0441(2), Florida Administrative Code, provides that in resolving territorial disputes, the Commission may consider customer preference if all factors are substantially equal. Here, the majority considers customer preference and goes on to base its decision on customer preference, when all factors are not substantially equal. Here, the factor of history of service to the territory weighs heavily in favor of West Florida. This factor has been routinely considered, and even heavily weighed, by this Commission in determining numerous territorial disputes. See Order No. 13668, issued September 10, 1984, in Docket No. 830484-EU, and upheld in Gulf Power Company v. Public Service Com'n, 480 So.2d 97 (Fla.1985); Order No. 12324, issued August 4, 1983, in Docket No. 830271-EU; Order No. 16106, issued May 13, 1986, in Docket No. 850087-EU; Order No. 18886, issued February 18, 1988, in Docket No. 870235-EI; Order No. PSC-98-0178-FOF-EU, issued January 28, 1998, in Docket No. 970512-EU, 1998 WL 104560.
In contrast to the Commission's treatment in previous dockets, history of service to the territory has been arbitrarily disregarded by the majority in this case. The Commission has not initiated revisions to our rule to eliminate history of service to the territory from being considered. It does not seem appropriate for the Commission to consider this factor in some cases and disregard it in others.
....
I believe that the majority decision is unfair and one-sided. The record in this case reflects that West Florida has provided this territory with safe, reliable service for over 50 years. During this time, it has served rural residential and small commercial customers spread over a wide area. For the first time, a huge customer has come to this part of the Cooperative's territory. Despite the fact that Gulf Power has never served a single customer in the area, the majority has awarded this large customer to Gulf Power.
Id. at 1207. Thus, for the reasons so ably articulated by Commissioner Palecki, I dissent from this Court's affirmance of the PSC's order.
LEWIS, J., concurs.