# Supreme Court of Florida

_____

No. SC11-1830
_____

**CHOCTAWHATCHEE ELECTRIC COOPERATIVE, INC.,**
Appellant,

vs.

**ART GRAHAM, ETC., et al.,**
Appellees.

[January 9, 2014]

LABARGA, J.

We review a decision of the Florida Public Service Commission (the Commission) relating to the service of a public utility providing electric service. We have jurisdiction. See art. V, § 3(b)(2), Fla. Const. The Commission settled a territorial dispute between two utilities: appellant Choctawhatchee Electric Cooperative, Inc. (CHELCO), and appellee Gulf Power Company (Gulf Power). CHELCO and Gulf Power each sought the right to provide electric service for Freedom Walk, a proposed multi-purpose development located in Okaloosa County. The Commission awarded Gulf Power the right to serve Freedom Walk. For the reasons explained below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Freedom Walk is an approximately 179-acre proposed development within the city of Crestview in Okaloosa County. The development, owned by Emerald Coast Partners, LLC, was designated by local ordinance in 2007 as a Community Development District. The developer's plans for Freedom Walk include both residential and commercial establishments.

In 2010, CHELCO petitioned the Commission to resolve a territorial dispute between CHELCO and Gulf Power regarding the right to provide electric service to Freedom Walk. In 2011, the Commission held a hearing on the dispute, following which the Commission issued its order resolving the dispute in favor of Gulf Power.[1] In the order, the Commission concluded that because the multiple

---

1. The Commission issued its order entitled "Order Resolving a Territorial Dispute and Awarding Territory in Okaloosa County to Gulf Power Company." The Commission divided the order into the following sections: (I) Background; (II) Approved Stipulations; (III) Boundaries of the Area That is the Subject of This Territorial Dispute; (IV) Commission's Jurisdiction to Enforce or Apply Provisions of Chapter 425, F.S.; (V) Is Freedom Walk Development a "Rural Area" as Defined in Section 425.03(1), F.S.; (VI) If the Freedom Walk Development Is Not Found to be "Rural" in Nature, Is CHELCO Prohibited From Serving the Freedom Walk Development; (VII) Nature of the Freedom Walk Development; (VIII) Existing and Planned Load to Be Served in the Freedom Walk Development; (IX) Necessary Facilities and Associated Costs for CHELCO to Extend Adequate and Reliable Service to the Freedom Walk Development; (X) Necessary Facilities and Associated Costs for Gulf to Extend Adequate and Reliable Service to the Freedom Walk Development; (XI) Necessary Facilities and Associated Costs for CHELCO and Gulf to Provide Adequate and Reliable Service Within the Freedom Walk Development; (XII) Uneconomic Duplication of Existing Facilities; (XIII) Capability of Each Utility to Provide Adequate and Reliable Electric Service to the

factors it considered were substantially equal, customer preference would determine the outcome of the dispute. The Commission concluded that customer preference favored Gulf Power and awarded Gulf Power the right to serve Freedom Walk. The Commission also determined that Gulf Power was entitled to a preference as an investor-owned utility.

On appeal, CHELCO challenges the Commission's findings and conclusions in four areas: (1) cost to provide service; (2) ability to provide service; (3) uneconomic duplication of facilities; and (4) customer preference as the determining factor. The Florida Electric Cooperatives Association (FECA) filed an amicus brief in support of CHELCO.

## ANALYSIS

### Standard of Review

CHELCO's appeal of the Commission's order invokes this Court's mandatory jurisdiction under article V of the Florida Constitution. Specifically, our mandatory jurisdiction includes review of actions by the Public Service Commission related to electric service. See art. V, § 3(b)(2), Fla. Const. As we fulfill our constitutional obligation, we are mindful of the scope of our review, and we afford deference to the Commission's findings. As we have consistently

---

Freedom Walk Development; (XIV) Customer Preference; and (XV) Awarding of the Right to Serve the Freedom Walk Development.

observed, "[c]ommission orders come to this Court clothed with the presumption that they are reasonable and just." W. Fla. Elec. Coop. Ass'n v. Jacobs, 887 So. 2d 1200, 1204 (Fla. 2004) (citing Gulf Coast Elec. Coop. v. Johnson, 727 So. 2d 259, 262 (Fla. 1999)). Thus, CHELCO cannot prevail on appeal unless the Commission departed from the essential requirements of law. Id. (citing Ameristeel Corp. v. Clark, 691 So. 2d 473, 477 (Fla. 1997)). We will not disturb the Commission's findings and conclusions if they are supported by competent substantial evidence in the record and are not clearly erroneous. Id.

## Applicable Law

We now turn to the law that applies to the Commission's resolution of disputes between electric utilities. The jurisdiction of the Commission is set forth in chapter 366, Florida Statutes (2010), which governs public utilities. Specifically, the Commission's authority to settle territorial disputes such as the present one between CHELCO and Gulf Power is found in section 366.04(2), which provides that "the commission shall have power over electric utilities . . . [t]o resolve, upon petition of a utility or on its own motion, any territorial dispute involving service areas between and among rural electric cooperatives, municipal electric utilities, and other electric utilities under its jurisdiction." § 366.04(2)(e), Fla. Stat. (2010).

When resolving territorial disputes, the Commission must be especially mindful of its responsibility to avoid "further uneconomic duplication of generation, transmission, and distribution facilities." § 366.04(5), Fla. Stat. (2010). Moreover, the Commission is guided by multiple factors that are set forth by statute and by administrative rule. The statutory factors, which are not exclusive, include "the ability of the utilities to expand services within their own capabilities and the nature of the area involved, including population, the degree of urbanization of the area, its proximity to other urban areas, and the present and reasonably foreseeable future requirements of the area for other utility services." § 366.04(2)(e), Fla. Stat. (2010). Additionally, rule 25-6.0441, contained in the Florida Administrative Code, provides as follows:

> 25-6.0441. Territorial Disputes for Electric Utilities
> . . . .
> (2) In resolving territorial disputes, the Commission may consider, but not be limited to consideration of:
> (a) The capability of each utility to provide reliable electric service within the disputed area with its existing facilities and the extent to which additional facilities are needed;
> (b) The nature of the disputed area including population and the type of utilities seeking to serve it, and degree of urbanization of the area and its proximity to other urban areas, and the present and reasonably foreseeable future requirements of the area for other utility services;
> (c) The cost of each utility to provide distribution and subtransmission facilities to the disputed area presently and in the future; and
> (d) Customer preference if all other factors are substantially equal.

Fla. Admin. Code R. 25-6.0441 (2010).

## The Freedom Walk Dispute

Because the Commission determined that the factors it considered with respect to CHELCO and Gulf Power were substantially equal, it relied on customer preference to settle the dispute. CHELCO argues that certain factors were not substantially equal and that therefore, the Commission should not have reached the issue of customer preference. To the extent that the Commission did ultimately rely on customer preference, CHELCO also argues that the Commission erred when it determined that customer preference favors Gulf Power. As we evaluate CHELCO's claims, we stress the deference to which the Commission's order is entitled, and we emphasize that the Court will not substitute itself as the finder of fact. Indeed, as we observed in Chicken 'N' Things v. Murray, 329 So. 2d 302, 305 (Fla. 1976), even when this Court differs with the Commission's view as to the effect of the evidence as a whole, an order will be upheld "so long as there is competent substantial evidence to support the orders." We now address CHELCO's claims, beginning with the factors that CHELCO argues are not substantially equal. We then turn to the issue of customer preference.

## Cost to Extend Service to Freedom Walk

CHELCO challenges the Commission's findings and conclusions related to the two utilities' costs to extend service to Freedom Walk. Rule 25-6.0441(2)(c) of

the Florida Administrative Code provides that the Commission may consider "[t]he costs of each utility to provide distribution and subtransmission facilities to [Freedom Walk] presently and in the future." As a part of this analysis, the Commission evaluated both CHELCO's and Gulf Power's costs to extend service to the Freedom Walk development.

The Commission concluded that CHELCO would not incur any cost to extend service to Freedom Walk apart from existing facilities and planned upgrades, and CHELCO does not challenge that conclusion. However, CHELCO does challenge the Commission's findings and conclusions as to Gulf Power's actual cost to extend service to Freedom Walk. Moreover, CHELCO argues that the difference in the two utilities' costs demonstrates that those costs are not substantially equal.

The parties agree that in order to provide service to Freedom Walk, Gulf Power would have to extend its existing three-phase utility line that runs along Old Bethel Road by 2,130 feet in order to reach the Freedom Walk area. The existing utility line would be extended at a cost of $89,738. Gulf Power offered testimony that this line extension project is the only investment or upgrade necessary to extend electric service to Freedom Walk that is independent of existing facilities and planned upgrades. Ultimately, the Commission determined that $89,738 is the total cost that Gulf Power would incur in order to extend service to Freedom Walk.

However, CHELCO contends that the Commission erred when it excluded a $40,000 transformer upgrade cost from Gulf Power's total cost to extend service to Freedom Walk. The record indicates that Gulf Power planned a large substation conversion project that would occur over the course of several years. One aspect of the project would upgrade Gulf Power's Airport Road substation. Although the Airport Road substation upgrade would eventually serve Freedom Walk, the completion of the conversion was not dependent on Gulf Power being awarded the right to serve the development. Gulf Power estimated that the Airport Road substation upgrade would happen between the years of 2011 and 2015. However, in the event that the project became delayed, Gulf Power acknowledged the possibility that it would need to upgrade three single-phase transformers at the Airport Road substation at a cost of $40,000 in order to meet Freedom Walk's electricity demand.

The Commission concluded that the $40,000 cost should not be attributed to Gulf Power's cost to extend service to Freedom Walk because Gulf Power would only incur that cost if the large conversion project did not proceed as planned. The Commission stated: "We believe that the transformer replacement project is not a project that Gulf intends to complete, but was identified for the purposes of this docket in order to obtain a clear picture of Gulf [Power]'s existing facilities and how their currently planned projects would impact their ability to serve the

Freedom Walk development." In re Petition to Resolve Territorial Dispute with Gulf Power Company in Okaloosa County by Choctawhatchee Electric Cooperative, Inc., Docket No. 100304, Order No. PSC-11-0340-FOF-EU, 2011 Fla. Puc. Lexis 239, 2011 WL 3646464 at 38 (F.P.S.C. Aug. 15, 2011) ("Order"). The Commission reached its findings and conclusions as to Gulf Power's actual cost after considering extensive testimony from both parties, and we will not disturb the Commission's determination that $89,738 is Gulf Power's cost to extend service to Freedom Walk.

CHELCO also maintains that even if Gulf Power's cost is only $89,738, because CHELCO would not incur any additional cost to extend service to Freedom Walk, the Commission erred when it concluded that the two utilities' costs were substantially equal. CHELCO contends that two of our prior cases support its argument: Gulf Coast Elec. Coop. Inc. v. Clark, 674 So. 2d 120 (Fla. 1996), and Gulf Power Co. v. Pub. Serv. Comm'n, 480 So. 2d 97 (Fla. 1985).

In Gulf Power, the earlier of the two cases, Gulf Coast Electric Cooperative (Gulf Coast) filed a petition seeking to resolve a territorial dispute between it and Gulf Power, as both utilities "sought to provide electrical service to [a subdivision]." 480 So. 2d at 98. After the petition was filed but before the Commission ruled on the dispute, Gulf Power extended its utility lines a distance of 2.2 miles in order to reach the subdivision and built a substation that would

- 9 -

allow it to satisfy the subdivision's anticipated power needs.  Id.  The cost to Gulf

Power was approximately $200,480.  Id.

The Commission found that the cost to Gulf Coast to extend service to the

subdivision amounted to approximately $27,000, and that the reason for the

difference in the two utility providers' costs (approximately $173,480) was the

closer proximity of Gulf Coast's existing facilities to the subdivision.  Id.  The

Commission concluded that Gulf Power's "relatively extravagant expenditures in

providing service" were "reckless and irresponsible" and resulted in "an

uneconomic duplication of electrical facilities."  Id.  Consequently, the

Commission awarded Gulf Coast the right to provide electric service to the

subdivision.  Id.  On appeal, we rejected Gulf Power's invitation to reweigh the

evidence and substitute our judgment for that of the Commission.  Id.  (stating that

". . . Gulf Power's attacks on the [Commission's] analysis represent a thinly veiled

attempt to have this Court reweigh and reevaluate the evidence presented to the

[Commission].  This we cannot do.").

We subsequently compared the difference in costs in Gulf Power with the

$14,583 difference in another electric service territorial dispute and concluded that

the smaller amount was "de minimis in comparison."  Clark, 675 So. 2d at 123.  In

Clark, the Gulf Coast cooperative spent $14,583 to upgrade a single-phase line to a

three-phase line to enable it to provide service to a new prison.  Id. at 122.  The

- 10 -

Commission found that the upgrade was uneconomic and relied in part on this factor in awarding competitor Gulf Power the right to serve the prison. Id. at 122-23. This Court concluded that competent substantial evidence did not support, among other findings, that the $14,583 difference in costs was considerable. Id. This Court said:

> Compare, for instance, the costs incurred for the upgrade in this case with the costs incurred in Gulf Power Co. v. Public Service Commission, 480 So. 2d 97 (Fla. 1985) (difference between Gulf Coast's $27,000 cost to provide service and Gulf Power's $200,480 cost to provide service found to be considerable). The cost differential in this case is de minimis in comparison to the cost differential in that case.

Id. at 123.

We decline to simply apply the costs discussed in Gulf Power and Clark as firm indicators for what differences in costs are de minimis and what differences are excessive. Despite CHELCO's reliance on these cases, we are mindful of the highly fact-specific nature of the territorial disputes that come before the Commission. As a result, Gulf Power and Clark do not provide a one-size-fits-all formula for evaluating costs, nor do they mandate the conclusion that Gulf Power's and CHELCO's costs to extend service to Freedom Walk are not substantially equal.[2] Consequently, we affirm the Commission's findings and conclusions.

---

2. Moreover, even if the costs in Gulf Power and Clark provided absolute parameters for determining whether a difference in costs is significant, the $89,738 difference at issue in this case is almost in the middle. However, by a margin of

**Capability to Provide Adequate and Reliable Service**

CHELCO also argues that Gulf Power is not capable of providing Freedom Walk with adequate and reliable service because it must build additional facilities and incur the costs of doing so. Under rule 25-6.0441(2)(a), the Commission may consider "[t]he capability of each utility to provide reliable electric service within the disputed area with its existing facilities and the extent to which additional facilities are needed." Fla. Admin. Code R. 25-6.0441(2)(a) (2010).

The Commission evaluated the overall ability of each utility to provide Freedom Walk with adequate and reliable service and concluded that each one was similarly capable of doing so. The Commission considered the nature of each utility's existing facilities and the extent to which each would need additional facilities. We note that the language of rule 25-6.0441(2)(a) provides for the Commission's consideration of "the <u>extent to which</u> additional facilities are needed" and find this language instructive because it highlights the Commission's duty to weigh the evidence in light of the facts of each dispute. Id.

Moreover, the Commission properly considered each utility's history of providing adequate and reliable service. The record reveals that both utilities have provided service in the local area for decades and have responded to utility outages

---

$5,107, the cost in this case is actually closer to the "de minimis" $14,583 cost differential in Clark.

in a reasonable manner.  Moreover, both utilities have adequate resources in the vicinity.  Competent substantial evidence supports the Commission's determination that both utilities are capable of providing adequate and reliable service to Freedom Walk, and we will not disturb the Commission's findings and conclusions.

**Uneconomic Duplication**

CHELCO also challenges the Commission's conclusion that awarding Gulf Power the right to serve Freedom Walk would not result in uneconomic duplication of facilities.  The Florida Legislature has emphasized the Commission's duty to avoid uneconomic duplication in section 366.04(5),which provides as follows:

> The commission shall further have jurisdiction over the planning, development, and maintenance of a coordinated electric power grid throughout Florida to assure an adequate and reliable source of energy for operational and emergency purposes in Florida and the avoidance of further uneconomic duplication of generation, transmission, and distribution facilities.

§ 366.04(5), Fla. Stat. (2010).  We have observed that certain factors are relevant to a determination of whether uneconomic duplication is likely to occur.  These factors, which are not exclusive, include the utilities' costs to provide service, "lost revenues for the non-serving utility, aesthetic and safety problems, proximity of lines, adequacy of existing lines, whether there has been a 'race to serve,' and other concerns . . ."  Clark, 674 So. 2d at 123.  A utility's historical presence in an area

may also be relevant to the Commission's analysis. W. Fla. Elec. Coop. Ass'n, Inc. v. Jacobs, 887 So. 2d 1200, 1205 (Fla. 2004).

Not all duplication of facilities is "uneconomic." Id. Where some duplication of facilities may occur, the duplication may nonetheless avoid being deemed uneconomic if the difference in costs between the utilities is de minimis. Id. However, there is no bright-line rule for evaluating whether a difference in costs is de minimis, and the Commission evaluates the cost differential within the context of other case-specific factors.

The Commission considered whether an award to either CHELCO or Gulf Power would result in uneconomic duplication. In doing so, the Commission considered each utility's existing facilities and planned upgrades. Notably, the Commission considered that if awarded the right to serve Freedom Walk, Gulf Power would have to extend its existing utility line and spend $89,738 to do so, and determined that this project is solely triggered by the prospect of Gulf Power providing electric service to Freedom Walk.

CHELCO raises three issues relating to uneconomic duplication: (1) Gulf Power will duplicate existing CHELCO facilities; (2) the Commission failed to consider all elements necessary to determine whether duplication of facilities is uneconomic; and (3) CHELCO's historical presence is relevant to determining uneconomic duplication. We examine each argument in turn.

- 14 -

## Duplication of CHELCO Facilities

CHELCO argues that Gulf Power's extension of its three-phase utility line along Old Bethel Road will result in an uneconomic duplication of existing CHELCO facilities. The Commission concluded that some duplication of facilities would result if either utility was awarded the right to serve Freedom Walk:

> The record is clear that both CHELCO and Gulf have had lines close to the Freedom Walk development for more than 40 years. CHELCO's three-phase line is on Old Bethel Road at the northern boundary of the development. In addition, CHELCO has a single-phase service line, with a 1967 easement, that previously served a residence within the Freedom Walk property, but unrelated to the development. Gulf's three-phase line is 2,130 [feet] from the Freedom Walk development; however, Gulf has had a single-phase line within 30 feet of the eastern boundary of the development since 1955. Further, CHELCO's single-phase line running along Old Bethel Road appears to run parallel with Gulf's three-phase line which serves the schools. Based on these facts, it appears that Gulf's existing lines are in the immediate vicinity of CHELCO's existing lines. Further, because of the close proximity of the lines, the provision of service to the development by either CHELCO or Gulf could result in a further duplication of facilities.

Order, 2011 WL 3646464 at 47.

The Commission received competent substantial evidence in the form of witness testimony and detailed exhibits that depicted the location of each utility's existing lines relative to the location of Freedom Walk. CHELCO argues that the Commission's analysis of uneconomic duplication should not have included CHELCO's single-phase utility line that runs parallel to Gulf Power's three-phase line. CHELCO argues that the location of these utility lines is too removed from

- 15 -

Freedom Walk to be relevant to the determination of uneconomic duplication. This argument improperly asks this Court to substitute its judgment with that of the Commission on a matter that is clearly within the Commission's expertise. This we will not do. The Commission determined that the locations of specific utility lines are relevant to its analysis of uneconomic duplication; its judgment is entitled to deference by this Court.

CHELCO also contends that uneconomic duplication results from the $89,738 difference in the two utilities' costs to extend service to Freedom Walk. CHELCO challenges the Commission's conclusion that the $89,738 difference in the two utilities' costs is not significant and argues that the difference in costs is especially egregious because, as the Commission found, CHELCO would not incur any additional costs in order to extend service to Freedom Walk.

The Commission considered four tests that were testified to at length by Theodore Spangenberg, Jr., a Gulf Power witness: (1) "the magnitude of the cost to extend facilities to the development in contrast to the total investment to serve Freedom Walk"; (2) "the [cost of the] investment to extend service to Freedom Walk as a percentage of the estimated annual non-fuel revenue Gulf [Power] expects to gain from serving the development"; (3) "the ratio of total investment, including the investment required for facilities within the disputed area, to Gulf [Power]'s estimated annual non-fuel revenue from Freedom Walk"; and (4)

"whether the facilities that might initially be perceived as duplicative would have a reasonable prospect for future use in addition to just serving the area in dispute." The Commission concluded that each of the tests demonstrated that uneconomic duplication would not occur if Gulf Power was awarded the right to serve Freedom Walk.

CHELCO contests the Commission's reliance on the four tests. However, the Commission's conclusion did not solely rely on the tests. The Commission also considered whether service by either CHELCO or Gulf Power could result in duplication of facilities, whether each utility would be able to serve Freedom Walk with existing facilities, whether the existing facilities will be used "regardless of which party is approved to provide service to Freedom Walk," and whether either party would have a stranded investment if not awarded the right to serve Freedom Walk. Additionally, although the Commission did not find the factor weighty as to either party, it did take into consideration each utility's historical presence. We will not disturb the Commission's findings and conclusions.

Evaluation of Necessary Factors

CHELCO also argues that the Commission failed to consider all of the necessary factors in determining whether uneconomic duplication would result from awarding Gulf Power the right to serve Freedom Walk. We reject CHELCO's assertion that the Commission's order was inadequate. Our review of

the order revealed that in considering uneconomic duplication, the Commission evaluated the pertinent factors. The Commission addressed the proximity of each utility's lines to the other's and concluded that some duplication, but not uneconomic duplication, would occur if either utility was awarded the right to serve Freedom Walk. The Commission also addressed the difference in each utility's costs to extend service to Freedom Walk, lost revenues for the non-serving utility, the adequacy of each utility's existing lines, whether each utility's existing facilities would continue to be used regardless of which utility was awarded the right to serve Freedom Walk, whether either utility's upgrades and plans were triggered by the Freedom Walk project, and whether any of the utilities' existing investments would become stranded if not awarded the right to serve Freedom Walk. CHELCO's argument is without merit.

## Historical Presence

CHELCO also contends that the Commission did not give the proper weight to CHELCO's historical presence. This Court has observed that "[t]he historical presence of one utility in an area thus may be relevant in determining whether uneconomic duplication would result from an award of service to another." Jacobs, 887 So. 2d at 1205.

CHELCO's argument is without merit. The Commission did not overlook historical presence; it considered the historical presence of both utilities.

Competent substantial evidence in the record demonstrates that both Gulf Power and CHELCO have utility lines in proximity to Freedom Walk. Moreover, each utility has a decades-long historical presence in the area. Although CHELCO argues that this case is similar to Jacobs, we disagree. Unlike Jacobs, the record in this case does not indicate a disparate historical presence that favors CHELCO.

In sum, we will not disturb the Commission's findings and conclusions related to uneconomic duplication because they are supported by competent substantial evidence and are not clearly erroneous.

**Customer Preference**

CHELCO also challenges the Commission's findings and conclusions with respect to customer preference. Rule 25-6.0441(2)(d) provides that "if all other factors are substantially equal," customer preference may be considered in resolving territorial disputes. Fla. Admin. Code R. 25-6.0441(2)(d) (2010). CHELCO argues two points. First, CHELCO contends that customer preference should not have been taken into account because the other factors considered by the Commission were not substantially equal. Given our resolution of the issues already raised by CHELCO, we reject this argument at the outset. Second, without conceding that customer preference was properly considered, CHELCO argues that the developer's preference should not have been deemed customer preference for the purpose of rule 25-6.0441(2)(d). This argument is also without merit.

The record reveals that in September 2008 and February 2011, developer Emerald Coast Partners, LLC, sent letters to Gulf Power indicating its preference that Gulf Power serve as the electric utility provider for Freedom Walk. Both letters were sent to Gulf Power by the developer's managing partner, Bruce Houle. The 2011 letter also indicated that Gulf Power remained the developer's preferred utility despite the ongoing dispute with CHELCO. Competent substantial evidence supports the Commission's findings and conclusions as to customer preference.

CHELCO also argues that developer Emerald Coast Partners, LLC, should not be a proxy for the customer because the interests of the developer and the end-user customer might be inconsistent with one another.[3] CHELCO points to the Commission's reluctance in prior disputes to substitute the developer's preference for end-user customer preference. In this case, the developer was the only reasonable proxy for future Freedom Walk residents. Based on the letters sent to Gulf Power, which were the only evidence in the record of customer preference, the developer expressed a preference that Gulf Power provide electric service to Freedom Walk.

CHELCO urges this Court to reweigh and reconsider the evidence and to read additional requirements into the consideration of customer preference. For

---

3. Although CHELCO argues that the developer is not an appropriate proxy for the customer, CHELCO chief executive officer Leigh Grantham conceded at the hearing that a developer acts as an agent on behalf of the end-user customer.

example, CHELCO notes that other customer preference decisions discussed in the Commission's order involved cases where the Commission considered developer preference as well as at least some end-user customer preference. Where the facts demonstrate that a developer is the only reasonable proxy for the customer, we reject the invitation to limit the consideration of developer preference to situations where there is also end-user customer input. CHELCO also invites this Court to examine the motives behind the developer's preference for Gulf Power. Again, we will not usurp the Commission's proper role as the finder of fact. The Commission did not depart from the essential requirements of law when it considered the developer's preference for Gulf Power. Competent substantial evidence in the record reflects that preference.

## CONCLUSION

In sum, the Commission's findings and conclusions are supported by competent substantial evidence and are not clearly erroneous. For these reasons, we affirm the Commission's order granting Gulf Power the right to serve the Freedom Walk development.

It is so ordered.

POLSTON, C.J. and PARIENTE, LEWIS, CANADY, and PERRY, JJ., concur.
QUINCE, J., dissents.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Florida Public Service Commission

Norman H. Horton  Jr. and Robert J. Telfer III of Messer, Caparello & Slef, P.A., Tallahassee, Florida; Marsha E. Rule and Martin P. McDonnell of Rutledge, Ecenia & Purnell, P.A., Tallahassee, Florida; and William B. Willingham and Michelle Hersehell of Florida Electric Cooperatives Association, Inc., Tallahassee, Florida,

     for Appellants

S. Curtis Kiser, General Counsel, Samantha M. Cibula, Attorney Supervisor, and Kathryn G. W. Cowdery, Senior Attorney of the Florida Public Service Commission, Tallahassee, Florida; Steven R. Griffin, Jeffrey A. Stone, and Russell A. Badders of Beggs & Lane, LLP., Pensacola, Florida,

     for Appellees